[Crim. Nos. 7010, 7011. Second Dist., Div. Two. May 18, 1960.]

THE PEOPLE, Respondent, v. RICHARD DALE HAGGARD, Appellant.

[Two Cases.]

Paul K. Duffy for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, for Respondent.

FOX, P. J.—We have here two appeals by defendant Haggard.

### Appeal No. 7010

In the first of these cases (No. 7010) defendant Haggard[1] was convicted of (1) violating section 506, subdivision (a), of the Vehicle Code,* in that he drove a vehicle upon a public highway while addicted to the use of narcotic drugs (Count I); (2) violating section 11500 of the Health and Safety Code in that he furnished and gave away a narcotic, to wit, marijuana (Count II); and (3) violating section 11500, Health and Safety Code, possession of marijuana (Count III). He has appealed from the judgment and sentence.

Some two or three weeks prior to May 14, 1959, two acquaintances of defendant brought Deputy Sheriff Berman to defendant's home, at which time defendant was introduced to him under the name of Dick Hannah. The officer inquired of defendant whether he knew where he, the officer, could purchase some marijuana. Defendant replied in the negative. Between the time of their first meeting and May 14th, Officer Berman contacted defendant several times, either personally or by telephone, making inquiries about the purchase of marijuana. The officer contacted him at approximately 6:45 p.m. on the 14th and indicated that he desired to buy some marijuana. Defendant advised the officer that he was waiting for his partner to arrive, whereupon he would be able to make a purchase. At approximately 7 p.m. defendant advised the officer that his partner was not going to arrive, and that he would pick it up for him. He further advised the officer to meet him at a certain drive-in in North Hollywood. The officer proceeded to the designated place. Some 15 minutes later, defendant arrived driving his foreign-made car accompanied by an adult male. Defendant came over to the officer's car and told him that he had gone to two locations in an attempt to secure marijuana for him but had been unsuccessful. He further told the officer that if he would come by his home at 7 o'clock on the following evening, he would have some marijuana for him. Defendant thereupon drove away with his companion.

Two days later, Officer Berman examined defendant at the Burbank Police Department. He observed seven brownish

---

[1]Although there were two defendants in this case, Haggard alone has appealed; hence he will be referred to as the defendant.

*Reporter's Note: Section as numbered prior to 1959 recodification.

scabs over the inner elbow of the right arm; one such scab over the inner elbow of the left arm, and a fresh, red puncture wound over the vein of the inner elbow of the left arm.

Berman had had special training and extensive experience in the field of narcotic addition, having testified in court between 250 and 300 times in narcotic cases and having served as an expert in some 50 cases. It was his opinion that these scabs and the fresh, punctured wound were caused by the illegal injection of narcotics. Defendant told Berman that he had been using heroin since 1958 and that he had his last "fix" the morning of the arrest, May 16th. At the time of the interview, Berman examined defendant's eyes and found them to be pinpointed with no reaction to light. This was an indication that defendant was under the influence of an opiate. Berman inquired of defendant whether he was going to get sick, to which he replied in the negative but stated that he might throw up a little. This statement indicated to Berman that the defendant had a narcotic habit but it was not great enough to cause violent withdrawal symptoms. This is a summary of the evidence upon which the conviction under Count I is based.

Count II is based upon a transaction that occurred on May 15. At about 6:40 p.m. on that date Berman went to defendant's residence. He told defendant that he wanted to purchase marijuana. Defendant informed Berman that his partner would be arriving shortly, and that they were going to supply a number of people. At approximately 7 o'clock, Peter Pulos, the other defendant, arrived at Haggard's home. Appellant then said to the officer, "That's my partner. Now we can score." Pulos had attempted to contact his connection but the party was not at home. Pulos informed Berman that he had a little bottle to get him "high" until he could "score" tomorrow. Pulos then removed a cigarette carton from his pocket and asked Haggard for something into which he could put the marijuana. Haggard gave Pulos a cellophane wrapping from a cigarette package. Pulos placed a small quantity of the marijuana in it and handed it to Berman. An analysis showed the contents of the package to be marijuana.

On the morning of May 16th, Berman again met defendant at his home. Defendant told Berman that his partner had called and was on his way. Later Pulos arrived, and made a telephone call. He then indicated that he could procure marijuana and inquired of Berman how much he wanted. Berman replied that he wanted two cans, for which he would pay $22.

Berman gave him the $22 and Pulos left. Approximately an hour later, Pulos returned. Berman, defendant and Pulos then went into defendant's bedroom. Pulos removed a brown paper bag containing a green, leafy substance from his pocket. He asked the defendant to get a container into which they could empty the contents of the bag. Defendant produced the top of a shoe box from his closet; Pulos then emptied the contents of the bag into the lid. He then removed approximately half of the substance and placed it in a small paper bag furnished by appellant. This bag was thereupon handed to Berman. Upon analysis, the contents of the package were found to be marijuana. This is the evidence upon which the conviction in Count III is based.

██ In seeking a reversal, defendant argues that the evidence is insufficient to support his conviction under Count I. There is no controversy over the fact that defendant was driving on the day in question, May 14th. The problem here arises over whether the defendant was actually addicted to the use of narcotics on that date. Deputy Berman, an expert in the field of narcotic addiction, explained to the court the physical observations and other symptoms that indicate addiction. These included brownish scabs and the fresh puncture wound in the inner elbow region; the pupils of the eyes becoming contracted or pinpointed and having no or very little reaction to light; and nausea when the narcotic is withdrawn for a period of time. As previously noted, defendant exhibited these physical symptoms and, in addition, admitted to the officer that he had been using heroin since sometime in 1958. The testimony to which we have referred is ample to sustain the court's implied finding that defendant was guilty of addiction on May 14th.

Counsel for defendant points out that he was not examined by Officer Berman until the 16th. However, addiction, once acquired, is a condition which prevails over a period of time. It was a reasonable inference to be drawn from the evidence we have summarized that defendant was a narcotic addict on the 14th, when he drove his automobile on a public highway and thus violated section 506, subdivision (a), of the Vehicle Code.

While defendant denied that he had marks on his arms when arrested, denied using heroin, and denied telling Officer Berman that he had been using it since 1958, it is apparent that the court did not believe his testimony but on the contrary accepted the testimony of Officer Berman concerning the

physical examination and interview of the defendant at the Burbank Police Department. This, of course, was the province of the trial court for it is his responsibility to pass upon the credibility of the witnesses and to determine the weight that should be given to their testimony. (*People* v. *Alonzo,* 158 Cal.App.2d 45, 47 [322 P.2d 42].)

 Defendant also contends that the evidence is insufficient to support his conviction under Count II, apparently on the theory that the marijuana which was furnished Berman was provided by defendant Pulos rather than by Haggard. But the evidence which we have previously summarized with respect to this count clearly shows that Haggard aided and abetted Pulos in this transaction (see Pen. Code, § 31), for, among other things, he provided the cellophane wrapping in which to place the marijuana that was furnished Berman. The fact that defendant may not have actually handled the marijuana in question will not exonerate him. (*People* v. *Basco,* 121 Cal.App.2d 794, 796 [264 P.2d 88]; *People* v. *Hood,* 150 Cal.App.2d 197, 202 [309 P.2d 856].)

Defendant argues that Berman's testimony was so weak that it did not overcome the presumption of innocence in favor of defendant. However, the weight to be given to Berman's testimony was a matter for the trier of fact and not for this court. (*People* v. *Gonzalves,* 158 Cal.App.2d 98, 101 [322 P.2d 255].) The record clearly shows that the defendant willingly took part in furnishing the marijuana to Berman on the night in question.

Defendant argues that Officer Berman's conduct constituted entrapment. The availability of this defense "depends upon whether the intent to commit the crime originated in the mind of defendant or in the mind of the entrapping officers." (*People* v. *Benford,* 53 Cal.2d 1, 10 [345 P.2d 928].) The court further stated that "where a defendant has a preexisting criminal intent, the fact that when solicited by a decoy he commits a crime does not show entrapment. (Citations.)"

 Applying these principles to the factual situation at hand, we conclude that the trial court properly could find that defendant was not entrapped for it could reasonably come to the conclusion that the intent to commit the crimes here charged originated in the mind of defendant. On the evening of May 14th the officer indicated to defendant that he desired to purchase some marijuana. Defendant advised the officer that he was waiting for his partner to arrive, and indicated that they would be able to supply him. Some few minutes

later defendant informed the officer that his partner was not going to arrive and that he, Haggard, would pick it up for him. He also instructed the officer to go to a certain drive-in in North Hollywood. Shortly thereafter, defendant informed him that he had not been able to obtain a supply but told the officer to come by his residence at 7 p.m. the following evening, that he would then be able to supply him. It will be recalled that the brownish scabs on defendant's inner elbows clearly indicate that he was obviously familiar with the narcotic trade. This is corroborated by his admission to the officer that he had been using narcotics for quite some time. These circumstances indicate that defendant was not an innocent person who was induced to commit the crimes charged by the trickery of a police officer. (See *People* v. *Neal,* 120 Cal.App.2d 329, 333 [261 P.2d 13].) It is thus apparent from the record that Berman merely furnished defendant an opportunity to commit these offenses. This does not constitute entrapment. (*People* v. *Ballard,* 145 Cal.App.2d 94, 100 [302 P.2d 89] ; *People* v. *Lindsey,* 91 Cal.App.2d 914, 917 [205 P.2d 1114].)

Defendant also makes the claim that the evidence indicating defendant's addiction was secured through an unlawful search. He seems to base this contention on the theory that his arrest on the 16th was unlawful. This is wholly without merit. His arrest on the morning of the 16th was based upon his transaction that morning with Officer Berman and the information which the officer had furnished his fellow officers who actually made the arrest. There was an ample showing of probable cause. The arrest was obviously legal. It therefore follows that the search which disclosed the marks on defendant's inner elbows and the contraction of his eyes was lawfully obtained.

The judgment in case Number 7010 must be affirmed.

### Appeal No. 7011

In this case, defendant was convicted on two counts of violating section 11714, Health and Safety Code (furnishing narcotics to a minor). He has appealed from the judgment and sentence.

On the evening of May 2d, 1959, Tamara Lynch, 15 years of age, had a date with defendant. On their way to a drive-in movie they parked about four blocks from the theatre. Defendant asked Tamara if it was all right if he smoked some ''pot.'' She knew that ''pot'' meant marijuana. She told defendant that she did not care, that it was up to him.

He asked her whether she wanted some, and she said yes. The cigarette defendant produced was wrapped in brown paper with the ends closed. Defendant bit on the end and flattened it and wet the tip; he then lit the cigarette and blew on it so that it would continue to burn. The odor of the smoke was sweet and different from the smoke of ordinary cigarettes. As the cigarette burned it made occasional spitting sounds. When Tamara smoked the cigarette her hands felt heavy and she coughed repeatedly. Defendant referred to the cigarette that was being smoked as a ''joint.'' When it was smoked down almost to the end, defendant ate it. On their way to the drive-in after smoking the cigarette, defendant drove his car over a curb. When they arrived there his eyes were half closed and he fell asleep.

Tamara also testified that on the evening of May 30th she had another date with defendant. Another boy was with them. They parked on Franklin Avenue near Hollywood. Defendant took a cigarette from his pocket that had the same appearance as the cigarette smoked on May 2d; the ends were the same; it was lighted in the same manner, and the cigarette made a spitting sound as it burned. The cigarette was passed around among the three occupants of the car. When Tamara inhaled the smoke she coughed and her throat became raw and sore. After smoking the cigarette she became very light-headed and happy; later she was thirsty and sleepy. When defendant smoked the cigarette he held his nose as he puffed on it.

Officer Edwin O. Hall,[2] who was stipulated to be an expert in the field of narcotics, testified in response to hypothetical question based on Tamara's testimony, that it was his opinion that she was smoking marijuana on both occasions.

Defendant denied smoking a marijuana cigarette on either of these occasions, and also denied that he offered one to Tamara to smoke. Defendant also offered the testimony of Stanley F. Hansen, Doctor of Osteopathy, who testified that from the hypothetical questions directed to Officer Hall it was impossible to form an opinion as to what substance was smoked.

In seeking a reversal defendant contends that the evidence was insufficient to sustain his conviction because the substance contained in the cigarettes was not proved to be mari-

---

[2]See *People* v. *Flynn*, 166 Cal.App.2d 501, at pages 505 to 507 [333 P.2d 37], where Officer Hall's qualifications in the field of narcotics are detailed.

juana beyond a reasonable doubt. He also contends that the testimony of Dr. Hansen showed that Officer Hall went beyond the scope of his knowledge in answering the hypothetical questions. In effect, defendant is arguing the weight of the evidence. This, of course, was the responsibility of the trial court, not this court. ▉▉ Upon an appeal all evidence, and the reasonable inferences tending to support the finding of guilt, are to be accepted as true and the sufficiency of the evidence tested upon that basis. ▉▉ From the entire record it is clear that there was ample evidence to sustain the implied finding of guilt on both counts.

▉▉ Section 11714, Health and Safety Code, under which defendant was prosecuted, was repealed by an act approved June 23, 1959, which became operative on July 1, 1959. On the same date, and by the same act, section 11532 of the Health and Safety Code was enacted, making it unlawful to furnish marijuana to a minor. The information in this case was filed on June 24, 1959. Counsel for defendant argues that his client cannot be convicted of the offenses denounced by section 11714 because it was repealed before his conviction on September 25, 1959. There is no merit, however, in this argument. The situation here is governed by the general savings clause found in Government Code, section 9608. That section reads as follows:

"The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law."

There was no intention on the part of the Legislature to bar this offense, as is seen by the enactment of section 11532 of the Health and Safety Code, the same day section 11714 was repealed. It is clear that the conviction in this case must also be sustained.

The defendant, in each case, has appealed from the judgment and sentence. These are one and the same. (*People* v. *Smith,* 164 Cal.App.2d 510, 514 [330 P.2d 678].)

The judgment is affirmed in each case.

Ashburn, J., and Herndon, J., concurred.

Appellant's petitions for a hearing by the Supreme Court were denied July 12, 1960.