[Crim. Nos. 7418, 7419. Second Dist., Div. Two. Feb. 1, 1961.]

## THE PEOPLE, Respondent, v. ROBERT SAMUEL VALDEZ, Appellant.

(Two Cases.)

Gordon B. Friesen for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant was convicted, as charged in two separate informations, of violating Health & Safety Code, section 11530, illegal possession of marijuana, and section 11531, illegal sale of marijuana. He was sentenced to the state prison in each case, the sentences to run concurrently.

In each case, trial by jury was duly waived, and by stipulation the cause was submitted to the court on the transcript of the testimony adduced at the preliminary examination, each side reserving the right to offer additional evidence, and to object to the introduction of any evidence contained in the preliminary transcripts. It was agreed that all exhibits be deemed admitted in evidence subject to the rulings of the trial court on any objections made thereto.

### Appeal Number 7418

Approximately two to three weeks prior to the arrest for possession of narcotics, Officer Bridges, deputy sheriff attached

to the Narcotics Detail, received information from his office "in official report form," signed by a superior officer, to the effect that narcotics were being trafficked from a house at 1446½ West 95th Street, Los Angeles. The information had been received by the department from a confidential informant, whose name Bridges did not know. Deputy Bridges also spoke with two residents in the area, one of whom told him that at all hours of the day and night people would come up the alley and enter Mr. Valdez' home; that Valdez would turn his lights off and on, and would step outside and stand in the alley. Officer Bridges conducted a surveillance of this location at various times during the following two weeks.

One week prior to appellant's arrest, Bridges observed an automobile registered to a Tom Ingle, known to traffic in narcotics, parked near the house; he saw an unidentified person get out of the vehicle, remove something from his pocket and place it behind the fence of a nearby house, at this time looking over his shoulder. He proceeded down the alley and entered appellant's house where he remained for 10 or 15 minutes. He came out of the house, picked up the unknown object, and left in the car. On five or six occasions Bridges observed the lights in the house go out and appellant would then step outside and stand in the alley next to his front door; when the door closed the lights would go on again from inside the house. On two such occasions he walked up the alley and met another person.

At approximately 8:10 p.m. on October 22, 1959, the deputy observed a Russell Arnegard arrive at the location in a 1956 Mercury automobile and enter the house; shortly thereafter, accompanied by appellant, he left in the automobile. They returned in about one-half hour when both men entered appellant's home. About one-half hour later Arnegard left in his automobile. Deputies Bridges and Olson followed him and a short distance away a sheriff's patrol car, containing Deputies Berman and White, pulled in behind the Arnegard vehicle. Arnegard was arrested and narcotics were found. He stated that he had just purchased six marijuana cigarettes for $2.00. He refused to state from whom or where he had made the purchase. Deputy Bridges asked him if he had just purchased them and Arnegard stated, "That's right."

Deputy Bridges, with the three other deputies, then proceeded to 1446½ West 95th Street where they saw appellant standing on the sidewalk near an alley adjacent to his home. The officers identified themselves and appellant was placed

under arrest. Two of the deputies proceeded to the house, followed by the other two officers with appellant in handcuffs, and a Don Reid, a newscaster from a radio station. All entered the house; a search was made. In the bathroom was found a small dish containing marijuana, next to which was a packet of "zig-zag" cigarette papers; from the bedroom the deputy recovered certain boxes containing marijuana. There was no warrant for arrest or search.

After reading the transcript of the preliminary hearing containing the foregoing evidence, additional evidence was introduced on the question of consent. Appellant testified that at the time of his arrest, about 10:30 p.m. he was walking his dog on the street near his home; that the four deputies emerged from the police cars, armed with shotguns and told him not to move or they would shoot him; that two of the officers then ran down the alley to appellant's house, and the other two remained with him, stating he was under arrest; he was then taken into the house, at which time one of the officers was in the front room and the other was in the bathroom. Appellant testified that "they entered my house against my will." When asked if he gave the first two officers permission to enter the premises, he replied "No, I hadn't talked to them at all." He stated he did not give permission to anyone to enter, and denied that anyone asked for such permission.

Officer Bridges then testified that the four deputies had arrived with guns drawn, revolvers and a shotgun, and arrested Valdez; that the reason for the shotgun was "anticipating any reaction from one or both dogs owned by Mr. Valdez" about which he had prior knowledge. That he then asked appellant "if he had any narcotics in the house. He stated he did not. I asked him if I could look and he stated yes." Some time after entry into the house, appellant asked Bridges if he had a search warrant.

Appellant contends that the evidence was obtained by means of illegal search and seizure in that there was no probable cause for the arrest; that appellant's asking for a search warrant after entry into the house negates "any implication that a consent to search was given."

It is not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest when the search is made with defendant's consent. (*People* v. *Burke*, 47 Cal.2d 45, 49 [301 P.2d 241].) "The applicable law with respect to the matter of such consent is stated in *People* v. *Michael*, 45 Cal.2d 751, at page 753 [290

P.2d 852] : 'To protect his right to object to an unreasonable search or seizure a defendant need not forcibly resist an officer's assertion of authority to enter his home or search it or his person [citations], but if he freely consents to an entry or search, or voluntarily produces evidence against himself, his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable. [Citations.] Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.' [Citations.] As stated in *People* v. *Galle,* 153 Cal.App. 2d 88, at page 90 [314 P.2d 58] : 'While there is reason for the view that a request or a demand by an officer for permission to search premises is to some extent coercive, considered alone, it does not render the consent involuntary as having been obtained by coercion.' '' (*People* v. *Davis,* 178 Cal.App.2d 887, 893 [3 Cal.Rptr. 465].)

It is to be noted that appellant did not state that he did not freely give his consent, but, rather, that no consent was ever given. Conceivably, an inference favorable to appellant could have been drawn from the evidence. However, the fact that a defendant is under arrest and in handcuffs at the time of giving consent does not *per se* make a consent to a search involuntary. It is but one of the factors, but not the only one, to be considered by the trial judge who sees and hears the witnesses and is best able to pass upon the matter. (*People* v. *Lujan,* 141 Cal.App.2d 143, 147-148 [293 P.2d 93] ; *People* v. *Smith,* 141 Cal.App.2d 399, 402 [296 P.2d 913] ; *People* v. *Robinson,* 149 Cal.App.2d 282, 284, 287 [308 P.2d 461] ; *People* v. *Davis, supra,* 178 Cal.App.2d 887, 893.) The credibility of the witnesses and the weight to be given the evidence are matters for the trial court. The factual question of voluntary consent, upon sufficient evidence, was decided contrary to appellant's contentions.

 Defendant having freely consented, the search was not unreasonable. However, the trial court did find the arrest to be based upon probable cause and we conclude that the uncontradicted evidence is sufficient to support this finding.

Appellant contends that there is no evidence that the information contained in the police report was obtained from a reliable informant, and that Bridges could not recall the name of the informant.

 "Probable cause for an arrest is shown if a man of

ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] Probable cause may exist even though there may be some room for doubt. [Citations.] The court and not the officer must make the determination whether the officer's belief is based upon reasonable cause. [Citations.] The test in such case is not whether the evidence upon which the officer made the arrest is sufficient to convict but only whether the prisoner should stand trial.'' (*People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967].) The court looks only at the facts and circumstances presented to the officer at the time he was required to act. (*People* v. *Murphy,* 173 Cal.App.2d 367, 377 [343 P.2d 273].) ''Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt.'' (*People* v. *Smith,* 50 Cal.2d 149, 151 [323 P.2d 435].)

Although, in the absence of some pressing emergency, an arrest may not be based solely on information provided by an anonymous informer, such information is relevant on the issue of probable cause. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]; *People* v. *Moore,* 141 Cal. App.2d 87, 89-90 [296 P.2d 91].) The mere fact that the information did not come from the informant directly to the arresting officer does not prevent reliance on its trustworthiness if it reached him through official channels (see *People* v. *Hood,* 150 Cal.App.2d 197, 201 [309 P.2d 856]), and appellant did not, in the trial court, challenge the source of this information, or question the reliability of the informant. In any event, the officers did not rely solely upon that report, and when the information received is viewed in connection with the other factors disclosed by the evidence herein, we conclude that the trial court was justified in determining that there was a legal basis for an arrest without a warrant, and that the search as a part of the same transaction was an incident to a lawful arrest. (See *People* v. *Herman,* 163 Cal. App.2d 821, 825, 826 [329 P.2d 989]; *People* v. *Ramsey,* 157 Cal.App.2d 178, 184 [320 P.2d 592]; *People* v. *Cicchello,* 157 Cal.App.2d 158, 161-162 [320 P.2d 528]; *People* v. *Moore, supra,* 141 Cal.App.2d 87, 90; *Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 295.)

Appellant contends that it was error to admit evidence concerning the possession of narcotics by Arnegard

because, it is stated, they were obtained by an illegal search and seizure. The record shows that counsel objected to the evidence and the trial court stated, "I assume it is only being introduced for probable cause." No ruling was made and no further objection was made; no effort was made to procure a ruling and no motion was made to strike the testimony. In these circumstances the error, if any, is deemed waived. (*People* v. *Pratt*, 77 Cal.App.2d 571, 578 [175 P.2d 888]; *People* v. *Staver*, 115 Cal.App.2d 711, 724 [252 P.2d 700].)

## Appeal Number 7419

George A. Palmer, a deputy sheriff, attached to the Narcotics Detail as undercover agent, testified that on February 17, 1960, he went to 1446½ West 95th Street in Los Angeles where he saw the defendant Valdez. Palmer "asked him if he was holding and he stated yes. And I asked if I could pick up a half a pound of weed, which is marijuana as used in slang term. The defendant said, 'All I have is two cans.' I said that would be alright if I could have it. So he said yes. At that time I handed the defendant a $20.00 bill. He went in the location, remained in the location for approximately two minutes, at which time he came to the door and called out to come in. I went into the location and at that time I was handed through another person in front of the defendant, two wax paper bags containing a green leafy material." It was stipulated that the bags contained marijuana. Upon cross-examination, Palmer said that the third man in the room was a man known to him only as "Ronnie." He did not know his last name, his address or his telephone number, and would be unable to contact him at that time. He did not place Ronnie under arrest at that time or thereafter. When asked how he contacted Ronnie in the past, Palmer said he met Ronnie on or about February 8, 1960, when Sergeant Bridges called him to come to the station and he was introduced to Ronnie. Palmer did not know if Ronnie was under arrest or in custody at that time. He said he had previously seen defendant Valdez on February 8th at approximately 6:45 p.m. and again at about 9:30 that date. Appellant did not testify or present any evidence. He was found guilty of violating section 11531, Health & Safety Code, illegal sale of marijuana.

In the light of this record, the claims of appellant upon this appeal—entrapment and illegal search and seizure—are clearly without any merit. The contention seems to be that an inference must be drawn from the testimony of Officer

Palmer that "Ronnie" was a police informer; that he was at the location at the instance of Deputy Palmer and was working with the latter in this "entrapment" or "frame-up." This is tied in with the claim of alleged illegal search and seizure based upon the assertion that "Palmer did not give any justification for his visit to appellant's home and solicitation to purchase marijuana," with the ultimate contention that "the origination of a 'buy and sell' was with" Palmer, with no preexisting criminal intent on the part of appellant. He also contends that the deputy declined to divulge information about Ronnie, and that the prosecution failed in its duty to further identify him.

The defense of entrapment is fully discussed in *People* v. *Lindsey*, 91 Cal.App.2d 914 [204 P.2d 1114], and the applicable law is set forth therein at page 917, as follows: "Where the doing of an act is a crime, regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense. (15 Am.Jur., § 355, p. 24.) If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment. [Citations.] Where the defendant is not inveigled into commission of the crime there is no entrapment. [Citations.] It is only when the criminal design is conceived in the mind of the officer and does not originate with the accused, and a decoy is used to ensnare the innocent and law-abiding by persuasion, deceitful representation, inducement or allurement into the commission of the crime, that there is entrapment. [Citation.] Where an accused knowingly commits a crime by selling to a police decoy, there is no entrapment."

"Entrapment 'is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is on trial.' [Citations.]" (*People* v. *Braddock,* 41 Cal.2d 794, 803 [264 P.2d 521].) "The defense of entrapment must be raised at the trial in order to prevail; it 'is one to be presented as a question of fact.' [Citations.]" (*People* v. *Polsalski,* 181 Cal.App.2d 795, 800 [5 Cal. Rptr. 762].) Appellant's counsel concedes that he did not raise this point at the trial level.

There is no showing that appellant was lured, in-

duced or persuaded to make the sale.[1] There is no evidence of any arrangement having been made between Palmer and Ronnie, or that the officer had prior knowledge that Ronnie would be present in appellant's home. It cannot be said as a matter of law that the defense of entrapment was established by the officer's testimony. To the contrary. The logical inference is that appellant willingly and with preexisting criminal intent made the sale to Palmer who merely presented the opportunity. "Appellant's obvious familiarity with the narcotics trade, coupled with his ability to produce a substantial quantity of heroin on short notice, all indicate beyond a reasonable doubt that he was not an innocent person who was induced to commit the charge by trickery, persuasion or fraud of the officer." (*People* v. *Neal*, 120 Cal.App.2d 329, 333 [261 P.2d 13].) The quoted statement is pertinent here. The affirmative defense of entrapment was not established.

Appellant did not take the stand in an effort to prove or assert any of the other contentions made upon this appeal. The record does not present a situation requiring the disclosure of an informant. The contention that the officer gave no justification for his visit to appellant is likewise without any merit. There was no search or seizure and no such claim was made in the trial court.

Defendant has appealed from the judgments and sentences. The judgment is the sentence, and affirmance of the judgment carries with it affirmance of the sentence. (*People* v. *Carlson*, 177 Cal.App.2d 201, 207 [2 Cal.Rptr. 117].)

The judgment is affirmed in each case.

Fox, P. J., and McMurray, J. pro tem.,* concurred.

---

[1] "It is not necessary that the buyer deal directly with the seller. The fact that the parties deal with each other through a third party is sufficient to sustain a conviction." (*People* v. *Taylor*, 52 Cal.2d 91, 94 [338 P.2d 337].) See also *People* v. *Valencia*, 156 Cal.App.2d 337, 340 [319 P.2d 377]; *People* v. *Haggard*, 181 Cal.App.2d 38, 44 [4 Cal.Rptr. 898].

*Assigned by Chairman of Judicial Council.