Filed 3/27/15  P. v. Hill CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JIMMY HILL,<br><br>    Defendant and Appellant. | B254663<br><br>(Los Angeles County<br>Super. Ct. No. BA408086) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William Sterling, Judge.  Affirmed.

Lynn Ta, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Jimmy Hill appeals from a judgment and sentence, following his plea of no contest to possession of cocaine base for sale. He contends the trial court erred in denying his motion to suppress, pursuant to Penal Code section 1538.5, the cocaine base discovered on his person and in a Toyota van.[1] Appellant argues the trial court erred in determining that his encounter with the police officers was consensual, and that he voluntarily consented to a search of his person and the vehicle. Finding no reversible error, we affirm.

**PROCEDURAL HISTORY**

On September 9, 2013, the Los Angeles County District Attorney filed a one-count amended information charging appellant with possession of cocaine base for sale (Health & Saf. Code, § 11351.5). It was further alleged that appellant had suffered two prior strike convictions for a serious or violent felony pursuant to sections 1192.7 and 667.5, subdivision (c).

Appellant pleaded not guilty and denied the allegations.[2] After the court denied appellant's motion to suppress, he pled guilty to the charged count and admitted the two strike allegations. He also admitted a prior conviction under Health and Safety Code section 11370.2, subdivision (a).

The trial court sentenced appellant to eight years in state prison, consisting of the upper term of five years on the charged offense, plus three years for the prior conviction. It struck the two prior strikes pursuant to section 1385.

Appellant timely filed a notice of appeal.

---

[1] All further statutory citations are to the Penal Code, unless otherwise stated.

[2] Appellant initially elected to represent himself, but was represented by counsel at the suppression hearing.

# FACTUAL BACKGROUND[3]

### A.    *Prosecution Evidence*

At the hearing on the motion to suppress, Los Angeles Police Department Officer Phillip Chan testified as follows.  On February 19, 2013, he and Detective Jorge Trejo were monitoring the E Town Motel, a place known for narcotic activities.  Chan had previously conducted investigations at the motel, and had made more than 20 narcotics arrests there.  Trejo had information that narcotics dealers were staying at the motel.  Chan and Trejo were in plainclothes and driving an unmarked police vehicle.  They were working with several other officers, including Officer Uehara and Detectives Martin and Kearney.  Detective Kearney was a Caucasian man who was well over 6 feet tall.

During the surveillance of the E Town Motel, Chan observed appellant walking through the parking lot of a fast food restaurant adjacent to the motel.  Chan recognized appellant, having arrested him in June 2012 for possession of cocaine base.  When Chan lost sight of appellant, he contacted Officer Uehara and Detective Martin to see if they could see appellant.  The officers informed Chan that appellant had entered the E Town Motel.

Approximately 10 minutes later, appellant left the motel, walked back to the restaurant's parking lot, and entered a "purple colored" Saturn.  Chan and Trejo followed appellant, who drove one block east to the JJ Park Motel.  Chan had been to this motel numerous times, conducting narcotics investigations, executing search warrants, and making arrests.  Appellant entered the parking lot of the motel,

---

[3]    As the sole issue on appeal relates to the motion to suppress, the "Factual Background" is based on the testimony presented at the hearing on the motion.

3

parked in the back of the parking lot next to a tan Toyota Sienna van, and got out of his car.

Chan and Trejo exited their car and walked up to appellant. Their car was not blocking appellant's car. Chan identified himself as a police officer, showed appellant his badge, and asked if he could speak with appellant. He did not yell "police," and did not recall hearing any police officer yell "freeze." Chan spoke to appellant at a normal volume, "[b]asically like talking to any other individual." Neither Chan nor Trejo had a gun drawn, and appellant was not handcuffed when Chan asked to speak with him.

Appellant agreed to speak with Chan. When Chan asked appellant whether he was on probation, appellant responded that he was on probation for "'290, sex registration.'" Chan asked appellant whether he "had something that he shouldn't have right now." Appellant responded that he had "'[a] little bit of drugs.'" Trejo asked appellant if he could retrieve the drugs, and appellant said "yes." As Chan and Trejo were speaking with appellant, other police officers arrived at the JJ Park Motel.

Trejo searched appellant. He found narcotics in appellant's left front shirt pocket, and $966 in cash and a motel key in appellant's pants pocket. The officers then arrested appellant and handcuffed him. The police also recovered a key for the Toyota van from appellant; it was attached to the key for the Saturn. When the police asked appellant whether they could search the van, appellant responded, "'Well, it's not my car. I don't mind. Go ahead.'" Inside the van, the police found one and one-half ounces of cocaine base and $4,000 in cash. In addition, the police also recovered an envelope with appellant's name on it and an insurance bill in appellant's name.

4

## B.    *Defense Evidence*

Appellant did not testify.  Jennifer Tucker testified she was staying at the JJ Park Motel when she witnessed the incident.  She was not familiar with appellant, but had "seen him around."  As she was coming down the back stairs of the motel, Tucker heard a "big white guy, police officer" -- a "big, country-looking white guy" -- yell "'freeze,'" and saw appellant with his hands up.  Appellant was standing near a small red car.  A Mexican or Hispanic officer and an Asian officer then pulled up in a car.  The White officer searched appellant and pulled some money out of appellant's pants pocket.  The Hispanic and Asian officers were "just lingering."  Tucker had previously been convicted of forgery, being under the influence of a controlled substance, numerous counts of possession of a controlled substance, loitering with intent to commit prostitution, and second degree burglary.

On February 19, 2013, Marsiana Burnette was at the JJ Park Motel.  He knew of appellant because he had seen him before.  Burnette was parked in the motel parking lot in his van.  "Jeannine" was with him.  Burnette heard "a big, old white dude" say "'freeze.'"  The White male -- who was "tall and looked country" -- approached appellant, who was standing behind a "little red car."  According to Burnette, "a couple more people" followed the White male, including a Hispanic male and an Asian male.  "[T]hey got him and told him -- put his hand[s] behind his back and they went inside his pocket and brought something out and it looked like money."

Burnette was approximately 35 to 40 feet away when he made his observations.  Burnette and Jeannine prepared a written statement about the incident together and had it notarized.  Burnette wrote another statement on his own and also had it notarized.  Burnette had been convicted of four counts of attempting to sell a controlled substance, assault with a deadly weapon likely to

5

cause great bodily injury, pandering, giving false identification to a police officer, corporal injury to a spouse, possession of a controlled substance, burglary, and passing a fake check.

Jeannine Thomas-Malone was living with a friend at the JJ Park Motel in February 2013. She knew appellant from "seeing him in the neighborhood." Appellant drove a burgundy or red-colored car. On February 19, 2013, Thomas-Malone and Burnette were in a van parked at the motel. Thomas-Malone was talking to Burnette when she heard someone say, "'Hold it. Freeze.'" She turned to look, and saw a tall, large White male approach appellant, who was standing at the back of his car with the trunk open. Two Hispanic males and one Asian male were following behind the White male. Thomas-Malone observed appellant putting his hands behind his back and the White male removing some papers from appellant's "top pocket." She did not recall being at the E Town Motel that morning. However, she was "in and out of sleeping" in Burnette's vehicle, and Burnette could have driven it to the E Town Motel before going to the JJ Park Motel without her knowledge. She did not recall having been at the E Town Motel later that night.

C. *Rebuttal Evidence*

On February 19, 2013, Detective Trejo was conducting surveillance of the E Town Motel with other police officers. Officer Chan was his partner. Trejo first saw appellant exit a burgundy car in the adjacent restaurant's parking lot. Trejo lost sight of appellant for approximately 10 minutes before seeing him get back in his car and drive away. Trejo and Chan followed appellant to the JJ Park Motel, where appellant parked and exited his vehicle. The officers parked their car and approached him on foot. The police car was not blocking appellant's car.

6

Chan asked appellant a series of questions, including whether appellant had anything on his person. Neither officer said to appellant, "'Freeze, hold it, put your hands up'" or anything similar. Detective Kearney was not present, and Trejo had no recollection of Detective Kearney approaching appellant and yelling "freeze." According to Trejo, "freeze" is not a term that police officers use. Neither officer had his gun drawn.

Appellant told Chan he had "a little bit of narcotics" on him. Trejo asked if he could get it, and appellant said "yes." Trejo proceeded to remove approximately one ounce of cocaine base from appellant's left shirt pocket and $966 from appellant's left front pants pocket. Appellant was arrested and handcuffed. Detective Kearney was not present when Trejo conducted his search of appellant's person.

Later that night, during an attempt to locate appellant's residence at the E Town Motel, Trejo came in contact with Thomas-Malone. She was with some other people whom Detective Trejo had arrested for narcotics offenses in the past.

D.    *Ruling on Motion to Suppress*

After hearing argument from both parties, the trial court denied appellant's motion to suppress, concluding that the encounter was consensual. The court found that Officer Chan was credible, noting that his testimony was corroborated by Detective Trejo. With respect to the defense witnesses, the trial court stated:

"The civilian witnesses seem to believe that without much fanfare [appellant] was stopped, ordered to freeze, and searched a short while later by this country-looking person who first made that encounter. It could very well be that the truth is somewhere in the middle -- that this happened somewhat later in the encounter, after this consensual search had been effectuated and [appellant] ultimately was told to stop after it was determined either he was on probation or

7

that he was in possession of drugs by his very statement, if, in fact, that is what he made."

The trial court noted that Tucker and Burnette had credibility problems due to their prior criminal records. As to Thomas-Malone, although she had no prior convictions, she was frequently in the area of the motel and was presumably familiar with the narcotics activity in the neighborhood. The court noted that there was some evidence that people who resided in the area "help[ed] out people who are engaged in this sort of activity, which would wholly be consistent with their being less than truthful." "So in short, it just seems to me that under the circumstances, the credibility determination preponderates . . . pretty strongly in favor of the People's witnesses."

## DISCUSSION

Appellant contends the trial court erred in determining that his initial encounter with Officer Chan and Detective Trejo was consensual. He further contends that the officers lacked reasonable suspicion to detain him, and that the subsequent warrantless search of his person and the Toyota van was unlawful. We disagree.

"In ruling on a motion to suppress the fruits of an allegedly unlawful search, the trial court 'sits as a finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences.'" (*People v. Carrington* (2009) 47 Cal.4th 145, 166, quoting *People v. Laiwa* (1983) 34 Cal.3d 711, 718.) In reviewing a trial court's ruling on a motion to suppress, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment."

(*People v. Glaser* (1995) 11 Cal.4th 354, 362.)  The testimony of even a single witness, even if contradicted, is sufficient to support a finding of a trier of fact, unless physically impossible or obviously false.  (*Estate of Reed* (1955) 132 Cal.App.2d 732, 735; accord, *In re Frederick G.* (1979) 96 Cal.App.3d 353, 366; *Daly v. Wallace* (1965) 234 Cal.App.2d 689, 692.)  Moreover, as stated above, witness credibility is the exclusive province of the trial court hearing a suppression motion.  (*People v. Barnes* (2013) 216 Cal.App.4th 1508, 1520.)

Here, the trial court found the testimony of Officer Chan and Detective Trejo to be credible.  The officers testified that they parked their vehicle in the motel's parking lot without blocking appellant's vehicle, that they approached appellant with their guns holstered, that appellant was not handcuffed when they spoke with him, that no other officer was present, that they did not yell "freeze" or anything similar, that they asked if they could speak with him in a normal tone of voice, and that appellant agreed to speak with them.  As the officers' testimony is neither physically impossible nor obviously false, we defer to the trial court's credibility determinations.  Based on the officers' testimony, we conclude that the initial encounter between appellant and the two police officers was consensual.

As the Unite States Supreme Court has explained, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions.  So long as a reasonable person would feel free 'to disregard the police and go about his business,' [citation], the encounter is consensual and no reasonable suspicion is required.  The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature."  (*Florida v. Bostick* (1991) 501 U.S. 429, 434 (*Bostick*); accord, *In re Manuel G.* (1997) 16 Cal.4th 805, 821 ["Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur"].)  Thus, "even when officers have

no basis for suspecting a particular individual, they may generally ask questions of that individual, [citations]; ask to examine the individual's identification, [citations]; and request consent to search his or her luggage, [citation] -- as long as the police do not convey a message that compliance with their requests is required." (*Bostick*, *supra*, at pp. 434-435; accord, *People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1227 ["An officer has every right to talk to anyone he encounters while regularly performing his duties"].)

"[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Bostick*, *supra*, 501 U.S. at p. 439.) "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." (*United States v. Mendenhall* (1980) 446 U.S. 544, 554.)

Here, Officer Chan and Detective Trejo were the only officers initially present. They did not brandish their firearms, utter any commands, or speak in a threatening or forceful tone. Appellant was not handcuffed, and there is no evidence he was touched. The encounter occurred in a public place, not a police station. (See *Bostick*, *supra*, 501 U.S. at p. 437 [where an encounter takes place is a factor in determining whether encounter was consensual].) Finally, no physical impediment prevented appellant from re-entering his car and driving away. In short, under the totality of the circumstances, the police conduct here did not convey to a reasonable person that he was not free to decline the police officers'

10

requests or otherwise terminate the encounter. Accordingly, the trial court did not err in finding the encounter consensual.

Nor did the court err in determining that appellant's consent to the search of his person and the Toyota van was voluntarily given. "Consent to a search is a recognized exception to the Fourth Amendment's warrant requirement." (*People v. Cantor* (2007) 149 Cal.App.4th 961, 965.) When the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the State has the burden of showing "consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances . . . ." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 248-249.) The question of the voluntariness of the consent is to be determined in the first instance by the trier of fact, and we defer to the trial court's finding on this issue, if supported by substantial evidence. (*People v. James* (1977) 19 Cal.3d 99, 107 (*James*).)

Here, the trial court impliedly found that appellant voluntarily consented to the search of his person. The officers testified that after appellant informed Officer Chan that he had some narcotics on him, Detective Trejo asked if he could retrieve the narcotics, and appellant answered, "yes." Appellant was not arrested or in handcuffs when he gave consent to the search and seizure of his person for the narcotics. (Cf. *People v. Zamudio* (2008) 43 Cal.4th 327, 341 ["Consent that is the product of an illegal detention is not voluntary and is ineffective to justify a search or seizure"].) Moreover, there was nothing "inherently coercive . . . either from the nature of the police questioning or the environment in which it took place." (*Schneckloth v. Bustamonte*, *supra*, 412 U.S. at p. 247.) As stated above, appellant was questioned during a consensual encounter in a public place. The officers neither displayed their weapons, nor uttered threats or commands. Accordingly,

11

substantial evidence supported the court's finding that appellant voluntarily consented to the search of his person.

Likewise, the trial court impliedly found that appellant voluntarily consented to a search of the Toyota van. The officers testified that they recovered a key to the van from appellant. Officer Chan asked appellant if the police could search the van, and he responded, "Well, it's not my car. I don't mind. Go ahead." Although appellant had been detained at this point, we conclude that he voluntarily consented to a search of the van. "'[T]he fact that a defendant is under arrest and in handcuffs at the time of giving consent does not *per se* make a consent to a search involuntary.'" (*James*, *supra*, 19 Cal.3d at p. 110, quoting *People v. Valdez* (1961) 188 Cal.App.2d 750, 756.) We find *James* instructive. There, after the "defendant was placed under arrest and handcuffed[,] [the officer] told defendant that he was conducting a robbery investigation, and asked if he could look in the house for items taken. Defendant appeared to have no difficulty understanding the request, and answered 'Yes' or 'Yeah.'" (*James*, *supra*, at p. 107.) Our Supreme Court found the defendant's consent was voluntarily given, as "the arresting officer neither held defendant at gunpoint, nor unduly detained or interrogated him; the officer did not claim the right to search without permission, nor act as if he intended to enter regardless of defendant's answer." (*Id*. at p. 113.)

Similarly, here appellant appeared to have no difficulty in understanding the officers' request to search the van, and he promptly gave his consent. The officers did not hold appellant at gunpoint, and had not unduly detained or interrogated him. Additionally, the officers did not claim the right to search the van without permission or intimate that they would search it regardless of his answer. Thus, substantial evidence supported the trial court's determination that he voluntarily

12

consented to a search of the van.  In sum, we discern no error in the trial court's denial of appellant's motion to suppress.

## DISPOSITION

The  judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


COLLINS, J.