[Crim. No. 5789.   Second Dist., Div. Two.   Mar. 19, 1957.]

THE PEOPLE, Respondent, v. VIRGIL DE WIT
ROBINSON, Appellant.

Gladys Towles Root, Eugene V. McPherson and Joseph A.
Armstrong for Appellant.

Edmund G. Brown, Attorney General, and Joan D. Gross,
Deputy Attorney General, for Respondent.

ASHBURN, J.—Convicted, after a nonjury trial, of possession of heroin (Health & Saf. Code, § 11500) appellant urges on appeal that there was an unlawful search of his apartment and seizure of the subject matter of the crime, a bindle of heroin which was hidden in the lower part of the back of his television set. No claim of unlawful arrest is made, only that of unlawful search and seizure. Both sides agree that the case turns upon the question of whether defendant freely consented to the search. The evidence was conflicting and the court believed that of the police officers, thereby rejecting defendant's version of the facts.

Accepting as we must on appeal the evidence and inferences favorable to the respondent (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]), the factual situation is as follows. The search was made without a warrant. Police Officer Fitzgerald, on the morning of April 2, 1956, saw two men on the northwest corner of 41st Street and Broadway in Los Angeles; he drove past them, looked back and saw one of them reach underneath some bush or shrubbery; he turned around to investigate; one of the men disappeared and the other hurriedly walked west on 41st Street. The latter was a colored man wearing a gray hat and gray coat. The officer searched the shrubbery and found nothing. He gave this description of the one suspect to Officer Waggoner, told what he had seen and said he thought it a narcotic transaction. As they were talking together on 41st Street defendant, who answered the description given by Fitzgerald, arrived in an automobile which he parked on 41st Street near an apartment building which later proved to be his place of residence. Fitzgerald, on his three-wheel motorcycle, drove past defendant's car on his way to show Waggoner and two other officers the place where the shrubbery was. As Fitzgerald passed defendant Waggoner saw him watching Fitzgerald and starting his car. Waggoner and Officer Phillips then crowded defendant to the curb before he had gone more than 100 feet or so and immediately arrested him "for narcotics." By radio communication with headquarters they learned that defendant had a narcotic record plus eight traffic warrants standing against him. He denied both aspects of that information. Asked where he lived he told the officers and Waggoner said he thought defendant had narcotics in his room and requested leave to search the apartment. Defendant made no reply. On inquiry he said he had a telephone and the officers said they could

check the traffic warrants while there. Again defendant remained silent. Then Waggoner said that if defendant so wished they could go downtown and obtain a search warrant. He replied that that was not necessary. "Well, let's forget about it; let's go up there." He produced the door key from his pocket, led the officers to the door, unlocked it and ushered them in. He was not handcuffed and sat near the wall before and during the search. Officer Phillips said: "Now the search begins," and defendant replied, "Go right ahead." The bindle of heroin was found inside the television set. Defendant first denied that he knew what it was. Finally he said he saw three Mexicans throw this package out of the window of a car, that he had picked it up and placed it in the television and that he thought it was heroin. Defendant's version of these events was contrary in most respects to the testimony of the police officers, but the trial judge rejected defendant's testimony as above indicated.

Counsel for appellant argue that the fact of consent given while under arrest *per se* spells submission to authority rather than voluntary waiver of the right to decline to submit to the search. In *People* v. *Lujan,* 141 Cal.App.2d 143, 147 [296 P.2d 93], this court said: "But the consent must be a voluntary one and whether it was such presents a question of fact. (*People* v. *Michael, supra,* at p. 753 [45 Cal.2d 751 (290 P.2d 852)]; *People* v. *Gorg, supra,* at p. 782 [45 Cal.2d 776 (291 P.2d 469)].) That question in this instance was decided by the trial judge contrary to appellant's contention, and upon evidence which suggests no other conclusion (*cf. People* v. *Michael, supra,* p. 753 and *People* v. *Gorg, supra,* p. 782), unless it be dictated by the fact that defendant was under arrest and in handcuffs at the time he gave his consent to a search of his home. Our state Supreme Court has not passed upon this specific point. It did, however, reject in *Rogers* v. *Superior Court,* 46 Cal.2d 3, 10-11 [291 P.2d 929], the federal rule that a confession made during a period of illegal detention is inadmissible. In so doing it distinguished the Cahan case, *supra,* upon grounds not pertinent here. The opinion does hold that the fact that a confession is made during an unlawful detention is 'only one of the factors to be considered in determining whether the statement was voluntarily made.' No good reason appears for holding otherwise as to consent to a search given while under arrest and in handcuffs. . . . It would be but natural for one who has been arrested with narcotics on his person and who believes there

is none in his home to acquiesce with alacrity to a search of that home; believing that nothing would be found, he would reason that his ready cooperation with the police would have a tendency to smooth somewhat the rocky road lying ahead of him, perhaps forestall a charge of selling, one which may carry a heavier penalty (see Health & Saf. Code, §§ 11712-11713) and much less likelihood of leniency in case of conviction.'' ▇ While the reasons for a voluntary consent which suggest themselves at bar are different from those just quoted, it does seem logical to infer that a culprit who has no narcotic on his person would readily agree to a search of his home if he believed that the drug was cleverly enough concealed to escape detection, thus convincing the officers of his innocence of the impending charge, or at the minimum incurring their goodwill through a show of cooperation. These considerations well may enter into a solution of the question of voluntary consent which essentially is one of fact (*People* v. *Gorg*, 45 Cal.2d 776, 782 [291 P.2d 469]), ordinarily not one of law. *People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852], says: ''Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances. Since the cases that have determined this question under varying factual circumstances are difficult if not impossible to reconcile (compare e.g., *Davis* v. *United States, supra,* 328 U.S. 582, 593-594 [66 S.Ct. 1256, 90 L.Ed. 1453], with *Johnson* v. *United States,* 333 U.S. 10, 12-13 [68 S.Ct. 367, 92 L.Ed. 436] ; *Waxman* v. *United States,* 12 F.2d 775, with *Pritchett* v. *State,* 78 Okla.Crim. 67 [143 P.2d 622, 623-625] ; *Smuk* v. *People,* 72 Colo. 97 [209 P. 636, 637], with *Salata* v. *United States,* 286 F. 125, 127), and may reflect imperfectly the factual situations before the courts that decided them, they point to no compelling solution in the present case.'' See also *People* v. *Burke,* 47 Cal.2d 45, 49 [301 P.2d 241] ; *People* v. *Smith,* 141 Cal.App.2d 399, 402 [296 P.2d 913]·; *People* v. *Allen,* 142 Cal.App.2d 267, 281 [298 P.2d 714].

▇ Upon oral argument counsel for appellant contended that the question of free consent is one of law because it must be decided by the judge upon evidence received in the absence of the jury. This position cannot be sustained. The question is one of fact (unless the evidence is wholly free from conflict and diverse inferences) to be decided by the judge, who

then must determine and declare as a matter of law whether the evidence secured through the search is admissible. This is the teaching of *People* v. *Gorg,* 45 Cal.2d 776, 780, 782 [291 P.2d 469], and *People* v. *Burke,* 47 Cal.2d 45, 49 [301 P.2d 241].

Federal cases cited by appellant* are not controlling. We deal here with a question of evidence (*People* v. *Cahan,* 44 Cal.2d 434, 440-442 [282 P.2d 905] ; *Breithaupt* v. *Abram,* 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448]), and hence are not bound by federal precedents as would be the case with a constitutional problem. We again quote from *People* v. *Lujan, supra,* at page 148 : "Appellant relies upon *Johnson* v. *United States,* 333 U.S. 10, 12-13 [68 S.Ct. 367, 92 L.Ed. 436], which holds that a police officer's entrance into a home after identifying himself and saying, 'I want to talk to you a little bit,' 'was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right.' (P. 13.) The California Supreme Court declined to follow this and certain other federal precedents, saying that 'they point to no compelling solution in the present case.' (*People* v. *Michael, supra,* 45 Cal.2d 751, 753.) Our conclusion that the mere fact of custody and handcuffs does not *per se* make a consent to a search involuntary, seems to be foreshadowed by the Michael and Gorg rulings, *supra.*" It is a dangerous process to reason from one combination of facts to another. The cited cases recognize that presence or absence of free consent is primarily one of fact, but some of them hold it to be absent as a matter of law in the circumstances present in the particular case.

That was the situation in the California case of *People* v. *Wilson,* 145 Cal.App.2d 1 [301 P.2d 974]. In that instance defendant had been arrested for vagrancy when evidence of suspected bookmaking did not materialize. The court said, at page 5 : "The present case is a good example of overzealous law enforcement. The arrest for vagrancy was an obvious subterfuge to try and secure evidence of bookmaking, and when that arrest, and the search of the person, failed to produce evidence of that activity, the police officers determined to search defendant's automobile." It was further

---

*United States* v. *Alberti,* 120 F.Supp. 171; *United States* v. *DeBousi,* 32 F.2d 902; *Byars* v. *United States,* 273 U.S. 28 [47 S.Ct. 248, 71 L.Ed. 520]; *Higgins* v. *United States,* 209 F.2d 819; *Johnson* v. *United States,* 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436]; *Judd* v. *United States,* 190 F.2d 649.

observed that the search "certainly was not for the purpose of finding evidence that defendant was a vagrant." (P. 6.) The arrest itself having been held improper, the search was justifiable only on the basis of consent, which the officers claimed to have been given. Recognizing that the question of consent is ordinarily one of fact, the court held (p. 7) that the circumstances there presented showed as a matter of law that there was "not a real or proper consent."

We cannot do that in the instant case. We adhere to the views expressed in Lujan. ▆ The fact that defendant is under arrest at the time of giving consent is one of the factors, but not the only one, to be considered in determining whether it was freely given; the trial judge who sees and hears the witnesses is best able to pass upon the matter. In this case the decision was made by a veteran trial judge and we cannot see that he abused his discretion in weighing the evidence and in holding the consent to have been voluntarily given.

Judgment and order denying motion for new trial affirmed.

Moore, P. J., and Fox, J., concurred.