[Crim. No. 3537.    First Dist., Div. One.    July 14, 1959.]

THE PEOPLE, Respondent, v. FRED DALTON, Appellant.

Frank S. McGorty for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Raymond M. Momboisse and John S. McInerny, Deputy Attorneys General, Thomas C. Lynch, District Attorney (San Francisco), and Janet Aitken, Assistant District Attorney, for Respondent.

TOBRINER, J.—The San Francisco grand jury indicted Fred Dalton, appellant, and Richard Wilson on two counts, Count I charging each defendant with conspiracy (Pen. Code, § 182) to violate sections 11500 and 11502 of the Health and

Safety Code and Count II alleging defendants violated section 11502. Section 11500 comprises the standard prohibition as to possession, transportation, administration, sale, or gift of narcotics; section 11502 prohibits in substance the selling, furnishing, transporting, administering, or giving to a person promised a narcotic another substance in lieu of it. Count I of the indictment charged as the overt act a conversation of the defendants with one J. Andrew Keeys. The jury rendered a verdict of not guilty as to Count I but guilty as to Count II. The court denied appellant's motion for a new trial.

The principal issue involves the admissibility of testimony of a conversation which appellant contends to be barred as hearsay. As we shall point out, we have concluded the testimony was properly admitted.

The factual history begins with an approach by J. Andrew Keeys, a special agent for the Bureau of Narcotics, to appellant. Keeys asked appellant, who was standing eight to ten feet in front of a pool hall, whether he had any "stuff" (heroin). Appellant answered that he did not, but that "his man Jimmie did." Appellant pointed to "his friend Jimmie" (Richard Wilson) who was standing beside the window inside the pool hall. Appellant then pointed to Keeys; "friend Jimmie" nodded; and appellant said, "My man Jimmie will take care of you." According to Keeys' testimony on cross-examination, when appellant pointed to Keeys concurrently with his statement that Jimmie would take care of him, Jimmie "shook his head in acknowledgement."

Keeys went into the pool hall. He told Wilson that appellant had sent him and that he wanted to purchase some heroin. Wilson said that he would get it. Keeys gave ten dollars to Wilson who said he would be back "in a few minutes." Wilson did return in a few minutes and slipped into Keeys' hand a cigarette package of the type that is given away as a free sample. Subsequent examination showed that the package contained a small bindle, which was paper wrapped with powder inside so as not to unfold easily. Inspection showed the contents of the package, subsequently marked People's Exhibit Number 1, not to be a narcotic.

In substance appellant makes a two-pronged attack upon the conviction; the first and chief contention, to which we have referred, that hearsay evidence was wrongfully ad-

mitted; the second, that the evidence does not support the judgment.

The contention as to hearsay stems from the admission of Keeys' testimony of his conversation with Wilson. As we have narrated, appellant told Keeys that "his man Jimmie" (Wilson) had some "stuff," pointed to "his friend Jimmie," and Keeys went into the pool room to speak to "Jimmie." The substance of the questioned conversation follows:

"Q. When you spoke to him, would you tell us the conversation you had with him?

"A. I told him that I . . . wanted to get some stuff, and that Freddie [defendant] had sent me . . .

"A. He said he would get it for me. I gave him the ten dollars, and he left the pool room and said he would be back in a few minutes . . .

"A. Mr. Wilson returned in a few minutes . . . and he slipped into my hand a cigarette package. . . ."

The trial judge overruled appellant's objection to the testimony but originally limited it to the first count of conspiracy. Later the court changed this ruling, instructing the jury that it could consider the Keeys-Wilson transaction on both counts.

Was this testimony inadmissible because the words were spoken outside the presence of appellant? We believe the testimony could properly be received upon two of the three grounds suggested by respondent: "First, because the statements and acts of Jimmie [Wilson] are not, in fact, hearsay; Second, because the acts and declarations form part of the transaction which is itself the fact in dispute. . . ."

In view of its historical disintegration we approach the problem of applying the hearsay rule with caution. In the fifteenth century when both the use of jury and witness emerged from the obscurantism of trial by battle, compurgation or ordeal, neither the jury nor the witness was limited by the rule of hearsay. Both could rely upon hearsay in informing themselves of the facts. Later as witnesses were used more commonly, the hearsay rule became an exclusionary device which reached its full strength in the eighteenth century. Since then it has been subjected to so many exceptions that it survives only as the skeletal remains of its former stature. Commentators have severely criticized it. The protracted morbidity of the principle itself induces a wary and narrow application of the doctrine.

Our initial analysis must probe whether the questioned evidence does actually constitute the prohibited hear-

say. The core of the rule lies in the understandable objective of preventing the use of a repeated assertion of an absent party as proof of the truth of the matter contained in the assertion. The danger lies in establishing as a fact the content of the utterance of a person not present and not subject to the test of cross-examination. Such testimony could conceivably level its damaging effect upon a litigant without the safeguard of cross-check, open analysis in a courtroom, adverse probing and dissection.

But none of these considerations apply to testimony which is not offered to prove the truth of its content. Here Wilson's answer in response to Keeys' request for heroin that "he would get it" was not adduced to prove the *fact* that Wilson would actually get the heroin, or that he intended to get it. The crime here was that Wilson procured a substitute for the promised narcotic. Respondent did not inject the assertion for the prohibited purpose at all; respondent neither sought to prove the fact that Wilson did procure the heroin nor that he intended to do so. The utterance was not offered as a demonstration of the truth of its own subject matter.

Consequently the testimony itself is not the forbidden hearsay. The authorities and the cases so declare.

"All of the authorities stress the point that the rule excludes hearsay statements only when they are offered for the same purpose as testimony of a witness on the stand, i.e., *to prove the truth of the matter stated.*" (Witkin, California Evidence, § 205, p. 232.) ▮ "If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. . . . ▮ The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*" (6 Wigmore, Evidence, § 1766, pp. 177-178.) "Hearsay evidence is testimony in court or written evidence, of a statement . . . being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (McCormick, Evidence, § 225, p. 460.)

*People* v. *King* (1956), 140 Cal.App.2d 1 [294 P.2d 972], upholds in a bookmaking case the admissibility of "evidence of the conversations on the telephone between the officer and those who called the house with reference to certain bets." (P. 9.) The opinion cites a number of decisions permitting the introduction of betmaking phone conversations of third

persons not for the purpose of proving the content of the conversation but the usage of the premises: *People* v. *Radley* (1945), 68 Cal.App.2d 607 [157 P.2d 426]; *People* v. *Joffee* (1941), 45 Cal.App.2d 233 [113 P.2d 901]; *People* v. *Reifenstuhl* (1940), 37 Cal.App.2d 402 [99 P.2d 564]; see also Witkin, *supra*, § 219, p. 245. These cases apply the general principle that the utterance introduced to prove a fact extraneous to its own content is admissible. They are decisive in the instant case.

Appellant's sole citation of *People* v. *Curtis* (1951), 106 Cal.App.2d 321 [235 P.2d 51], does indeed contain a general statement of the hearsay rule (p. 325), but the court admitted, rather than rejected, the questioned evidence under Code of Civil Procedure, section 1870, subdivision 6.

We turn to the second ground set out *supra* which supports the admissibility of the testimony: the Keeys-Wilson conversation tended to prove the precise fact in issue, a violation of Health and Safety Code, section 11502.

Code of Civil Procedure, section 1870, codifies this exception to the hearsay rule: "[E]vidence may be given upon a trial of the following facts:

"1. The precise fact in dispute; ...

"7. The act, declaration, or omission forming part of a transaction, as explained in section eighteen hundred and fifty ..."

Code of Civil Procedure, section 1850, states: "Where, also, the declaration, act, or omission *forms part of a transaction, which is itself the fact in dispute,* or evidence of that fact, such declaration, act, or omission is evidence, as part of the transaction." (Italics added.)

Since the trial proceeded upon the theory that appellant aided and abetted the crime of selling heroin and furnishing a substitute for it, the commission of the crime itself constituted the "precise fact in dispute" or the "transaction, which is itself the fact in dispute." Certainly the contemplation of a situation in which an aider or abetter does not present himself physically at the scene of the crime, but instigates or advises it, does not tax the imagination. In such a case the proof of the crime is essential to the conviction of the aider or abetter. The exclusion of the testimony showing the transgression would as a practical matter prevent introduction of proof of the guilt of the aider or abetter. Hence the Keeys-Wilson conversation and related actions are "part of the transaction . . . in dispute," and, indeed, an essential and "precise fact in dispute."

*People* v. *Henry* (1948), 86 Cal.App.2d 785 [195 P.2d 478], illustrates this exception to the hearsay rule. In a prosecution for attempting to obtain narcotics by fraud, a pharmacist testified he received a phone call from a man, proclaiming himself a certain doctor, who prescribed a narcotic for a "Mrs. Mitchell"; the druggist testified that he checked with the actual doctor, who denied giving the prescription. In approving the admissiblty of the pharmacist's conversation with the individual claiming to be the doctor, the court relied upon the departure "from the hearsay rule applying to cases in which the *very fact in controversy* is whether certain things were said or done and not as to whether these things were true or false, and in these cases the words or acts are admissible not as hearsay, but as original evidence. [Citing California cases.]" (Emphasis added.) The recent case of *People* v. *Race* (1957), 151 Cal.App.2d 678 [312 P.2d 322], quotes this language with approval (p. 687) in sustaining a conviction for violation of the bookmaking statute.

We conclude the court properly admitted the testimony pursuant to this orthodox exception to the hearsay rule.

As we pointed out *supra* appellant's second attack upon the conviction is the proverbial one, so often presented in such a case as this, that the evidence does not support the conviction. ▮ We consider the three statements of the argument:

(1) According to appellant "there is no evidence" that he committed "any acts condemned by the Statute singly or with another"; hence the requisite substantial proof is lacking. But appellant's personal performance of the prohibited acts was not a prerequisite to guilt if he aided or abetted the commission of the crime. (Pen. Code, §§ 31, 971.) There was a showing of substantial evidence on this score. (*Estate of Bristol* (1943), 23 Cal.2d 221 [143 P.2d 689].) ▮ Nor did acquittal on the conspiracy count negate, or even conflict with, conviction for aiding and abetting, which "is a separate and distinct offense from that of conspiracy." (*People* v. *Villa* (1957), 156 Cal.App.2d 128, 133 [318 P.2d 828].)

▮ (2) According to appellant a unity of act and intent did not exist. However, "the law . . . presumes it [the act] to have been intended. . . ." (*People* v. *Vogel* (1956), 46 Cal.2d 798, 802 [299 P.2d 850].) At the least appellant committed the act of aiding and abetting.

▮ (3) According to appellant the cigarette package and contents were improperly admitted. The question of

admissibility is identical with that of the propriety of the introduction of the Keeys-Wilson conversation. We have concluded the latter was admissible.

▮ Appellant's contention that respondent failed to prove the corpus delicti fails utterly in the light of the fact that the testimony showed Wilson agreed, to sell heroin to Keeys, took $10 from Keeys and then delivered a substance other than the narcotic. All the elements of a violation of section 11502 were established.

We affirm the judgment and the order denying the motion for new trial.

Bray, P. J., and Wood (Fred B.), J., concurred.