[Crim. No. 1768. Fourth Dist. July 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JEAN DONETTA BOST, Defendant and Appellant.

Monroe & Chula and George H. Chula for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, J.*—This is a case closely allied on the facts and the law to *"The People of the State of California* v. *Lloyd Thomas Hunter, Jr.,"* 4 Crim. 1771, *ante, p.* 385 [33 Cal.Rptr. 15], decided on this date. The preliminary examinations in both cases were held contemporaneously by stipulation of the parties, and in the superior court the entire evidence consisted of the reporter's transcript of the testimony taken at the preliminary examinations. The facts, therefore, received in evidence by both the committing magistrate and the superior court judge, who tried the case without a jury, applied to both charges. The defendant in this case, Jean Donetta Bost, was accused in the information with illegal possession of marijuana in violation of section 11530 of the Health and Safety Code.

There is no question but that Mrs. Bost actually had pos-

---

*Assigned by Chairman of Judicial Council.

session of 10 cigarettes which contained the forbidden substance, *cannabis sativa,* or marijuana.

The grounds upon which this appeal is based are in part identical with the grounds of appeal in the *Hunter* case. This appellant also contends, as did the appellant Hunter in the companion case: (1) that the magistrate in the court below failed properly to commit the defendant for trial and that consequently the superior court did not have jurisdiction; (2) that the presence of a deputy district attorney in the courtroom during the preliminary examination violated the statutory mandate contained in section 868 of the Penal Code and the order of exclusion made by the court based thereon; (3) that Officer Branson illegally entered the Hunter home and that all evidence of what happened there afterwards was inadmissible.

In addition, Mrs. Bost contends (4) that the admission of the evidence obtained by the police officers in their search of her premises was erroneous in that the search violated the Fourth and Fourteenth Amendments to the federal Constitution; and (5) that the trial court was not justified in making its implied finding that she had knowledge that the 10 cigarettes in her possession contained marijuana.

The first three grounds of appeal herein were considered in detail in the *Hunter* opinion (*ante,* pp. 387-393 [33 Cal. Rtpr. 15]), and the determination in that case that none of these contentions is sound applies equally to the present appeal; we shall not repeat the statement of reasons here, but simply refer to the opinion in the *Hunter* case and adopt what is said therein as a complete rebuttal of these contentions.

Reference is also hereby made to the statement of facts in *People* v. *Hunter* (ante, pp. 390-393 [33 Cal.Rptr. 15]), and such facts are incorporated here without specific repetition. On the night when Isbell and Officer Branson went to the apartment of Lloyd Hunter they had previously met and talked with the defendant, Jean Bost, and a man named David Smith at a bar. Isbell had informed Officer Branson that Hunter, Bost and Smith had been smoking marijuana at Mrs. Bost's house and that they had possession of additional marijuana cigarettes; he suggested that Branson and he should go to Clancy's Bar in Seal Beach, where they might meet some of the culprits. At the tavern, the officer and Isbell sat on bar stools next to Mrs. Bost and David Smith and had a drink with them. Isbell asked Bost and Smith

where he could get some of the "weed" they had had on that day, and Smith replied that he thought Hunter had some. As recounted in the *Hunter* opinion, Isbell and the officer then went to Hunter's house, and during the lengthy conversation that took place there that evening, Branson asked Hunter where he got the "weed" they were smoking. In reply Hunter said that he had gotten it from a Gary Brown in Long Beach, that he had made arrangements for it "yesterday" (that is, Saturday, December 9th) and that he had David Smith pick it up from Brown and roll it into cigarettes for him. Hunter said, "David brought it to me when I was at Jeanie's house." The officer thought that he said at that time that there were about 30 cigarettes, and, "I think I gave Jeanie about half of them, about fifteen."

On the next day, Officer Branson and Deputy Sheriff Mitchell went to Mrs. Bost's house; when she answered their knock, Branson asked her if she had seen Lloyd (Hunter); she said she had seen him earlier that day but that the income tax people were checking him, and Hunter was dodging them. The officer said to her that he was supposed to see Hunter about some "weed" and that Hunter had agreed to procure a can of it for him that night. He asked her if she could ". . . turn [him] onto a few joints." And she said "No," that he would have to see Lloyd and that she knew nothing about it.

Branson then identified himself as an officer, said that he had had a conversation with Hunter and that he had reason to believe she was in possession of marijuana. Mrs. Bost denied the charge, and told them to come in and that they were welcome to search the house. Shortly afterwards, other police officers joined them, and a search of the premises was conducted.

William N. Wallace, a sergeant in charge of the narcotics detail at the Orange County Sheriff's office, testified that he was present when Mrs. Bost's apartment was searched. When he entered the house she said, "You are welcome to look through the house. I have nothing here." Her purse with 10 rolled marijuana cigarettes was discovered in a bottom dresser drawer in her bedroom. The officers showed it to her, and she said, "They are not mine . . . I am just keeping them for somebody." Sergeant Wallace and others had stayed outside of her house for about 10 or 15 minutes, and one of the other officers finally came out and said they could enter. When they got inside, Sergeant Penhollow, one of

the officers who had remained outside, discovered that he had known Mrs. Bost previously. She recognized him, and there was a general conversation between them. He said they had information she was involved in narcotics, and she said, "No." Sergeant Penhollow asked if they could search the house, and she replied, "Yes, you are welcome to search if you want." Appellant Bost and Sergeant Penhollow seemed friendly with each other, and Mrs. Bost appeared quite cooperative. She said she had gotten the cigarettes from Lloyd Hunter, that he had been drinking, and she took half of the cigarettes which he had because she did not want him to get into trouble. She admitted that she had used narcotics in the past but claimed she was not using them anymore. Her husband, who is no longer with her, had been a user of narcotics.

Homer L. Mitchell, a Deputy Sheriff of Orange County, testified that he was in the company of Officer Branson when they went to the home of Mrs. Bost. When they stepped in the door after she had welcomed them to search the house and they showed her their identification, she said, "You are not police officers." They then showed their identification again, and she said, "Well, you are welcome to search." Then Officer Branson went to the door to call the other officers, and they entered the house. After they were inside, she said, "Well, do you have a warrant to search my house?" Officer Branson said, "No, you have given us your permission." Sergeant Penhollow asked her if she had anything there, and she said, "No, I don't. You are welcome to search."

THE COURT'S IMPLIED FINDING THAT THE APPELLANT GAVE VALID CONSENT TO THE SEARCH OF HER HOME IS SUSTAINED BY SUBSTANTIAL EVIDENCE, AND THE MARIJUANA CIGARETTES DISCOVERED AS A RESULT THEREOF WERE PROPERLY ADMITTED IN EVIDENCE.

It has frequently been held that it is not unreasonable for officers to seek interviews with suspects or witnesses at their homes. (*People* v. *Corrao*, 201 Cal.App.2d 848, 851 [20 Cal.Rptr. 492]; *People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852]; *People* v. *Martin*, 45 Cal.2d 755, 761 [290 P.2d 855]; *People* v. *Murray*, 198 Cal.App.2d 805, 808 [18 Cal.Rptr. 280].) It has been a long established rule both in California and under federal law that if without coercion officers secure a freely given consent to search a house, there is no need for a search warrant or for proof of probable cause, and any contraband procured during such a

search is admissible in evidence. (*People* v. *Michael, supra,* 45 Cal.2d 751, 753; *People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469]; *People* v. *Anushevitz,* 183 Cal.App.2d 752, 755 [6 Cal.Rptr. 785]; *People* v. *King,* 175 Cal.App.2d 386, 389-390 [346 P.2d 235]; *People* v. *Fields,* 167 Cal.App.2d 773, 776-778 [334 P.2d 1001]; *People* v. *Yancy,* 196 Cal.App.2d 665, 667 [16 Cal.Rptr. 766]; *Honig* v. *United States,* 208 F.2d 916, 919; *United States* v. *Dornblut,* 261 F.2d 949, 951; *Grice* v. *United States,* 146 F.2d 849.)

█ Whether or not the consent is voluntary or a submission to authority is a question of fact to be determined by the trier of fact. (*People* v. *Arketa,* 207 Cal.App.2d 194, 198 [24 Cal.Rptr. 257]; *People* v. *Robinson,* 149 Cal.App.2d 282, 284 [308 P.2d 461].) The court in the *Robinson* case stated several reasons why a guilty person might consent to a search that would produce narcotics and suggested (at p. 285) that a culprit might believe the drug was cleverly concealed and would thus escape detection, that a search might persuade the officers of his innocence, or at least that a consent freely given would incur the goodwill of the law enforcement personnel. It is also possible that an immediate offer to give permission for a search might be made in the hope that it would lead the police not to make as thorough a search of premises as would be conducted if there was opposition.

█ In any event, it would be difficult to imagine circumstances less coercive than those present in the instant case. There was no display of force; consent was politely sought and was politely and freely given at least three times. Mrs. Bost was not under arrest, or handcuffed, or under any form of duress. She greeted and conversed with one of the officers as an old friend or acquaintance. All of these facts buttress the People's contention that the officers were acting with proper respect for her constitutional rights.

It is also true that appellant Bost inquired at one point if the police had a warrant. It has been held that where a voluntary consent to a search is given it may not be countermanded during the search. (*State* v. *Lett* (Ohio App.) 178 N.E.2d 96, 101.) In the *Lett* case it was said the inquiry after consent, "Do you have a search warrant?" only went to show that he was cognizant of his right thereto. Here there was no purported revocation by appellant of the consent to the search. And after she asked the question, the

evidence shows that she specifically repeated her willingness that a search be made.

THE EVIDENCE WAS SUFFICIENT TO SUSTAIN THE IMPLIED FINDING THAT THE APPELLANT KNEW THE CHARACTER OF THE NARCOTIC SHE POSSESSED.

The appellant contends that there was no evidence that she knew of the narcotic character of the marijuana cigarettes found in her purse secreted in a bottom dresser drawer in her bedroom. She said the cigarettes were not hers; that she was just keeping them for somebody else; that she had taken half of appellant Hunter's cigarettes on the day before to keep him out of trouble.

The prosecution has the burden of proving that an accused person in possession of a forbidden drug had knowledge of its presence and its narcotic character. (*People* v. *Redrick*, 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Winston*, 46 Cal.2d 151, 160 [293 P.2d 40].)

Proof may be made by circumstantial evidence as well as direct. (*People* v. *Estrada*, 185 Cal.App.2d 435, 437-438 [8 Cal.Rptr. 308]; *People* v. *Williams*, 202 Cal.App.2d 387, 392, 395 [20 Cal.Rptr. 740].)

What sort of trouble was it that Mrs. Bost wanted to keep Hunter from getting into when she took half of his cigarettes from him? Ordinary cigarettes made with tobacco are not illegal, and no one could possibly be a law breaker for possessing a half-pack of cigarettes. Of course, possession of marijuana cigarettes could get Hunter into trouble, and an inference may be drawn from this testimony that Mrs. Bost knew that they were marijuana cigarettes. In passing on the veracity of the witness, the trial judge may well have asked himself if she really thought that possession of the cigarettes might get Hunter into trouble, why did she divide them equally and leave half of them with him? There is also evidence in the record of her prior familiarity with narcotics, both because she had used them herself and because her husband had been a user. This would support an inference of knowledge of the narcotic nature of the contents of the contraband. (See *People* v. *Williams*, *supra*, 202 Cal. App.2d 387, 395; *People* v. *Gonzales*, 186 Cal.App.2d 79, 83 [8 Cal.Rptr. 704].) The trial court had substantial evidence before it from which it could properly deduce that Mrs. Bost had knowledge of the contents of the forbidden cigarettes.

The judgment is affirmed.

Griffin, P. J., and Brown (Gerald), J., concurred.