[Crim. No. 1771. Fourth Dist. July 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LLOYD THOMAS HUNTER, JR., Defendant and Appellant.

Monroe & Chula and George H. Chula for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, J.*—This is a companion case to 4 Criminal 1768, *"People of the State of California* v. *Jean Donetta Bost," post,* p. 394 [33 Cal.Rptr. 10]. By stipulation the preliminary examinations of the two charges were held contemporaneously on the same evidence. In the superior court, by agreement of the parties, the testimony taken at the preliminary examination was received as the only evidence against both defendants by the judge sitting without a jury. However, each of the defendants appealed, and the two cases were given separate consideration in this court leading to the preparation of two opinions. Because many of the essential facts in the two cases are identical and equally applicable to the two charges, there will be numerous cross-references from one opinion to the other. Some of the points raised on appeal by each of the defendants are identical.

Lloyd Thomas Hunter, Jr., was charged with violation of section 11531 of the Health and Safety Code of the State of California:

". . . in that on or about the 11th day of December, 1961, in the County of Orange, State of California, [he] . . . , did wilfully, unlawfully, and feloniously sell, furnish, administer and give away a narcotic, to wit: — Marijuana."

*Assigned by Chairman of Judicial Council.

After the trial court found him guilty and denied his motion for a new trial, he was admitted to probation for three years on condition that he spend 60 days in the county jail.

The appellant does not claim that the evidence, if properly received, was insufficient to warrant a finding of guilt. For there is no question but that he did, in fact, furnish and give away (rather than sell and administer) marijuana cigarettes to a member of the narcotics detail of the Long Beach Police Department. The appellant, however, does complain as to various rulings of the trial court and argues that he was unfairly convicted because of procedural and evidentiary errors. The points raised by appellant Hunter in his briefs are: (1) that the magistrate below, after hearing the evidence at the preliminary examination, failed to commit the defendant and that therefore the superior court lacked jurisdiction; (2) that the presence of a deputy district attorney during part of the preliminary examination was a fatal violation of the requirement for the exclusion of those not immediately interested in the hearing (Pen. Code, § 868); (3) that "The evidence presented by the prosecution established entrapment as a matter of law"; (4) that the police officer, Branson, originally entered the home of appellant illegally and that this fact fatally tainted and required the elimination of all evidence subsequently secured.

1. The Contention That the Magistrate Failed Properly To Commit the Defendant Was Not Well Founded and Was Abandoned During the Oral Argument.

After the appellant urged in his opening brief that there was no proper commitment, the Attorney General served notice of a motion to augment the record by adding the formal written order of the committing magistrate, which is proper in form and content. The claim made by the appellant that there had not been a proper commitment was apparently based on the fact that the reporter's transcript of proceedings in the lower court did not include a specific oral order holding the defendant to answer. It is likely that counsel for the appellant, who undoubtedly was acting in good faith, forgot, or for some reason failed to know of the formal written order of commitment signed in due course and in proper form by the judge who heard the evidence. In any event, the attorney for the appellant frankly conceded at the oral argument that the commitment had been properly made and withdrew his previous contention to the contrary.

2. THE PRESENCE OF THE ADDITIONAL DEPUTY DISTRICT ATTORNEY IN THE COURTROOM AFTER THE ORDER OF EXCLUSION DID NOT VITIATE THE PROCEEDINGS.

 Before the taking of any testimony in the court below, counsel for the defendant said, "I'd like to make a motion for the exclusion of witnesses during the presentation of this preliminary.

"THE COURT: Your motion is only for exclusion of witnesses?

"MR. CHULA: Just witnesses.

"THE COURT: All other individuals that are going to be testifying as witnesses in the case please remain outside subject to call.

"MR. WALKER: For clarification, the officer sitting next to me now will not testify although he was one of the investigating officers.

"MR. CHULA: He may be called on behalf of defendants. I think I should make the further exclusion, all witnesses be excluded as under [Pen. Code, §§] 868-869, the one that includes any and all persons other than those authorized to be present at the time of the preliminary."

Thus, counsel for the appellant was not very clear or explicit in his demand, but the court did in fact understand it as a request for exclusion pursuant to section 868 of the Penal Code and acted on that basis.

Section 868 of the Penal Code reads as follows:

"The magistrate must also, upon the request of the defendant, exclude from the examination every person except his clerk, court reporter and bailiff, the prosecutor and his counsel, the Attorney General, the district attorney of the county, the investigating officer, the defendant and his counsel, and the officer having the defendant in custody; . . ."

During the first day's session, Mr. A. Lee Staton, a Deputy District Attorney of Orange County, entered the courtroom. The judge asked if there was any objection, and counsel for the defendant said: "Waiving objection. For the record, state Mr. Staton entered. Without waiving the presence of any other person; is that clear?" On the second day of the examination, Deputy District Attorney Staton again entered the courtroom, and counsel for the appellant then objected. The magistrate asked if there had not been a stipulation on the first day of the hearing to permit the presence of the deputy district attorney; the court assumed that the stipula-

tion covered the entire hearing. The attorney for the appellant, however, said that he had only given consent for the deputy's presence on the first day, and the court thereupon ordered Mr. Staton to remain outside of the courtroom.

Subsequently, counsel made a motion for dismissal on the ground that an unauthorized person had entered the sequestered preliminary examination. The motion was denied, and a motion to set aside the information in the superior court pursuant to section 995 of the Penal Code was also denied.

██ *People* v. *Elliot,* 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d 225], and *People* v. *Prizant,* 186 Cal.App.2d 542 [9 Cal. Rptr. 282], hold that the provisions of section 868 when properly invoked are ironclad and that a violation of the requirements of the section vitiates the commitment.

██ Appellant's point is not well taken for two good and sufficient reasons: first, the waiver which his counsel freely made on the first day of the trial apparently applied to Mr. Staton throughout the trial; while the attorney for appellant believed that he had sufficiently limited his waiver to the first day of hearing, anyone reading the record would understandably believe that the waiver was good throughout the trial; the trial court courteously accepted the statement of appellant's counsel and did exclude the deputy district attorney; no prejudice resulted to the appellant; secondly, it will be noted that section 868 makes a specific exception of "the district attorney of the county"; what an official may do in person may be done also by his deputy; it follows logically that any one or more of the deputies of the district attorney may remain in the courtroom under the exception specified in section 868 of the Penal Code, if he has any legitimate function to perform, either in connection with the case being heard or with the duties of law enforcement inherent in his office. We can conceive of situations where the exception of a district attorney's deputies might not apply; for example, if a deputy were on vacation or were simply a curious observer of what was taking place, entirely divorced from the duties of his office, the court might properly exclude him under the section, along with members of the general public. However, we hold that the burden is upon an objecting defendant to show that a deputy district attorney is not privileged to remain in the courtroom after the court has made an order of exclusion pursuant to section 868 of the Penal Code.

3. There Was Ample Evidence To Justify the Implied Finding That There Was No Entrapment.

A. G. Branson, a police officer of Long Beach attached to the narcotic detail, testified that on December 10, 1961, he accompanied a man named Bill Isbell, who had been a friend of appellant for eight or nine years, to Hunter's house, located at 1015½ Seal Way at Seal Beach. After knocking at the door and receiving no response, as Mr. Isbell testified, he pushed the door open, and he and Branson found Hunter asleep in the living room. The appellant seemed pleased to see his visitors, including Branson, whom he had never met. Branson had received information through Isbell that led him to believe that Hunter had been recently involved in improper possession and use of marijuana. Branson professed to be a member of the Baltimore Colts football team. Hunter is a barber, and often football professionals are barbershop heroes. Apparently he made a strongly favorable impression on Hunter, who produced whiskey, mixed drinks for all three, and, according to the testimony of Branson, without any solicitation or request on his part, gave him a hand-rolled marijuana cigarette; he asked, "Do you dig weed?" and received the answer "Yes" from the officer. The policeman lit the cigarette and, according to his own testimony, merely pretended to smoke it, then passed it back to Hunter, who smoked it down to a stub. When Hunter went into the kitchen, the officer put out the cigarette and preserved the "roach." It was introduced in evidence at the trial, and appellant's counsel stipulated that it, as well as the other cigarettes hereinafter referred to, contained marijuana. After the original drink, Hunter left the apartment to get more whiskey for himself and his guests, and later he voluntarily produced another hand-rolled marijuana cigarette, which he lit, smoked for awhile and passed to Officer Branson, who feigned smoking it and handed it back. This "roach" or stub was also preserved by the officer and was introduced in evidence at the trial.

Branson said to Hunter, "This is pretty good weed, where did you get it?" Hunter replied that he got it from a Gary Brown in Long Beach "yesterday" and had one, Dave Smith, pick it up from Brown and roll it into cigarettes for him. Hunter said, "David brought it to me when I was at Jeanie's house." (Mrs. Bost, defendant in 4 Criminal No. 1768.) The officer thought that Hunter said there were about 30 cigarettes; "I think I gave Jeanie about half of them,

about fifteen." The officer asked if Hunter could get him some "weed," and appellant said "Yes." He said, "I think I can get you a can for about $10." He further stated, "I will try to see Brown tomorrow and get two cans. I will get one for you . . . I will roll the other one up and if you come back down tomorrow night, we will have a party. . . . Bring some friends." When about to leave that night, around 12 o'clock, Branson was handed three other complete marijuana cigarettes by appellant.

On the following day Branson returned to appellant Hunter's residence at approximately 9 p.m., but Hunter was not at home. Hunter had told the officer on the preceding night that Jeanie Bost lived at 1107 Seal Way, a few houses away from his own apartment. Accompanied by Deputy Sheriff Mitchell, Officer Branson went to the Bost home. What took place there will be treated at some length in the opinion in the *Bost* case. After other officers began a search at the Bost house, which resulted in finding 10 marijuana cigarettes in her possession, Branson and Officer Mitchell returned to Hunter's home, and at that time Hunter handed Branson a Camel cigarette pack carrying five more marijuana cigarettes.

The testimony of Officer Branson, accepted and believed by the court, shows that the defendant was guilty of furnishing and giving away marijuana freely and voluntarily and without any indication of entrapment. There was evidence by Isbell, called on behalf of the defendant, which indicated repeated requests by Branson to be furnished with marijuana, but Branson's testimony is not in accord with Isbell's, and the trial court had the right to determine which evidence should be believed; as the finder of fact accepted Branson's version, we are not in a position to question the result.

It is apparent that Branson did deal in untruths in making what purported to be a friendly contact with the appellant; he misinformed him as to his name, his athletic status and his relationship with other alleged professional football players. It further appears that he drank his liquor and simulated social good fellowship, and thus "wormed" his way into the confidence of Hunter; he professed a friendship which he did not feel and made his approach on the basis of untruths. The pretended friendship followed by the arrest furnished an example of "betrayal with a kiss." Whether in the field of personal ethics Mr. Branson can excuse this

course of conduct on the ground that the end justifies the means is a matter for his own conscience.

What the state is interested in is whether the thought of breaking the law arose initially in the mind of the defendant, or whether the whole idea was instilled in an otherwise innocent person by a law enforcement agent. The Supreme Court said in *People* v. *Terry,* 44 Cal.2d 371, 372-373 [282 P.2d 19]:

"Entrapment as a matter of law is not established where there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit the particular offense originated in the mind of the accused."

(See *People* v. *Benford,* 53 Cal.2d 1, 10-11 [345 P.2d 928]; *People* v. *Estrada,* 211 Cal.App.2d 722, 726 [27 Cal.Rptr. 605].)

If the prosecution involves a sale of a narcotic and the officer uses no more persuasion than is ordinarily necessary to procure a sale, there is no entrapment. (*People* v. *Valdez,* 188 Cal.App.2d 750, 759 [10 Cal.Rptr. 664].) The *Valdez* case cites language often quoted from *People* v. *Neal,* 120 Cal.App.2d 329, 333 [261 P.2d 13]:

"Appellant's obvious familiarity with the narcotics trade, coupled with his ability to produce a substantial quantity of heroin on short notice, all indicate beyond a reasonable doubt that he was not an innocent person who was induced to commit the crime charged by the trickery, persuasion or fraud of the officer."

We might well say, as was said in the *Valdez* opinion, that the language is pertinent here.

Accepting Officer Branson's testimony, there was no solicitation of the narcotic by him; it was freely offered and given by Hunter. Even taking into account the divergent testimony of Isbell, he said only that the officer repeatedly asked for the narcotic. Certainly Hunter was not entrapped into possession of the narcotic, as it is clear that he had it before there was any contact with the officer. The sole possible contention is that he was entrapped into giving it away. But the defense testimony shows these alleged repeated requests all took place in a single sitting on the first occasion; appellant gave the narcotic to the officer shortly after he met him; no moral suasion was used; the officer did not pretend to be sick or in great need of the contraband; he just asked for it; on the second day it is undisputed that appellant Hunter gave the narcotic to Branson after a single request.

We believe that the trial court had ample ground on the entire record to make the implied finding that there was an absence of entrapment. (*People* v. *Benford, supra,* 53 Cal.2d 1, 5; *People* v. *Merkouris,* 52 Cal.2d 672, 678 [344 P.2d 1]; *People* v. *D'Agostino,* 190 Cal.App.2d 447, 462-463 [11 Cal. Rptr. 847]; *People* v. *Ray,* 185 Cal.App.2d 250, 254-255 [8 Cal.Rptr. 211]; *People* v. *Blocker,* 197 Cal.App.2d 420, 428-429 [17 Cal.Rptr. 247].)

4. THE ENTRY OF THE OFFICER INTO THE HOME OF APPELLANT WAS NOT IN THE GUISE OF TRANSACTING OFFICIAL BUSINESS, BUT UNDER THE THEORY THAT HE WAS A FRIEND OF A FRIEND OF THE APPELLANT; THE APPELLANT LATER RATIFIED THE ENTRY.

The final point made by the appellant is that Branson initially made an unlawful invasion of the privacy of appellant's home, that this "illegality" persisted throughout his visit and that, therefore, no evidence could properly be given of what occurred during the time Branson remained in Hunter's apartment. This contention is ingenious but unsound.

While it is true that Branson had no warrant of arrest or search warrant when he entered the home of appellant, he did not ostensibly go there as an officer, or purportedly on any official mission. He was accompanying a "friend" of Hunter when he went with him into the apartment house. They found the appellant asleep in the living room. After waking, he greeted Isbell and was introduced to Branson under the name of "Jack Shaw," who said that he was a member of the Baltimore Colts football team. Hunter seemed pleased to have both of these people in his apartment, and he not only gave them a preliminary drink of whiskey, but even left his home to buy more liquor for them. Branson testified that at a later time during the evening Hunter voluntarily produced marijuana cigarettes, and that the visit went forward in high form until midnight. There was obviously a ratification by Hunter of Branson's uninvited entry into his apartment. The later voluntary production of the marijuana cigarettes by Hunter was not a "fruit" (that is to say, a direct and proximate consequence) of the alleged illegal entry into the home. (*People* v. *Walker,* 203 Cal.App. 2d 552, 556 [21 Cal.Rptr. 692]; *People* v. *Macias,* 180 Cal. App.2d 193, 198-199 [4 Cal.Rptr. 256].) It should be observed, also, that the objection made at the trial does not

appear to have been based on the ground now urged on appeal, and it is therefore not available to appellant. (*People* v. *Carter*, 192 Cal.App.2d 648, 661 [13 Cal.Rptr. 541].)

We find no error in the record. The court had before it ample evidence upon which to find that the defendant was guilty as charged.

The judgment is affirmed.

Griffin, P. J., and Brown (Gerald), J., concurred.