[Crim. No. 12284.   Second Dist., Div. Two.   Dec. 19, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY SWEET, Defendant and Appellant.

Alfred V. Contarino, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Richard L. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

FLEMING, J.—Henry Sweet was convicted of four violations of Health and Safety Code, section 11501 (the sale, furnishing, or gift of narcotics); two violations of section 11531 (the sale, furnishing, or gift of marijuana); and one violation of section 11503 (the sale, furnishing, or gift of a non-narcotic substance after an agreement to sell, furnish, or give away a narcotic). Sweet appeals the judgment, claiming entrapment.

On 9 June 1965 Miss Barbara Etis, a narcotics addict with whom Sweet was acquainted, and a companion came to Sweet's apartment and asked Sweet if he knew where they could buy heroin. Sweet volunteered to go with them to Fifth Street and cop for them in buying heroin. Unknown to Sweet, Miss Etis was a police contact, and her companion was Bernard Parks, an undercover officer in the Narcotic Division, Los Angeles Police Department.

On that occasion, and also on 11 June, 16 June, and 9 July, Sweet directed Officer Parks to various locations at which either Sweet bought narcotics with money given him by Parks and delivered narcotics to Parks and Miss Etis, or Parks bought directly from a seller to whom he was introduced by Sweet.

On 13 July and on 16 July Parks appeared in Sweet's apartment with another informant and asked Sweet to help him buy marijuana. Sweet did so. In all respects these incidents were similar to the heroin purchases.

On 10 June 1965, Parks and Miss Etis went to Sweet's apartment. Miss Etis said "she was sick and she needed some stuff [heroin]." Parks suggested the seller from whom Sweet had bought the previous day. Sweet said it was too early in the day to tap that source and suggested they try another location. There, Sweet asked an acquaintance if he knew where narcotics were available. The acquaintance got into the car, directed Parks to an address, obtained money from Parks, left the car, and returned with a balloon containing a powder which later proved to be a nonnarcotic substance.

Nothing in the record indicates that Sweet profited from any of these transactions. Sweet waived trial by jury and did not testify.

A person who at the instigation of the police com-

mits a crime he would not otherwise have committed, is said to have been entrapped and may not be punished for that crime. ■ The test for entrapment in California is commonly called the origin-of-intent test. If the person who claims to have been entrapped can establish that the police generated in his mind "the original intent to commit criminal acts which [he] would not have committed . . . but for such inducement" (*In re Moore*, 70 Cal.App. 483, 488 [233 P. 805]), his defense is good. ■ If, however, the acts of the police merely furnish an occasion on which the defendant chooses to act on a "pre-existing criminal intent," then the defense of entrapment fails (*People* v. *Benford*, 53 Cal.2d 1, 10 [345 P.2d 928].) ■ On appeal, a trial court's finding of nonentrapment will be upheld if the record contains substantial evidence to support the finding. (*People* v. *Terry*, 44 Cal.2d 371, 372-373 [282 P.2d 19].)

■ The record in this case contains sufficient evidence to support an inference of pre-existing criminal intent. Sweet readily and without reluctance accepted the proposals of Parks and Miss Etis, and on 9 June he volunteered to cop for them before he had been asked to do so. The conduct of the police was not tainted by persuasion, deceit, coercion, or unusual enticements. (*People* v. *Estrada*, 211 Cal.App.2d 722, 727 [27 Cal.Rptr. 605].) Therefore, it was a justifiable inference that Sweet, given a suitable occasion, was ready and willing to commit the offense.

Sweet argues he acted out of friendship for Miss Etis and with knowledge of her need as an addict for narcotics and was therefore entrapped by an appeal to his sympathy. Yet on only one occasion did Miss Etis suggest that she had a physical need for narcotics, and that suggestion was by use of the ambiguous word sick. ■ The mere fact that a police officer ingratiates himself with a suspect and then asks him to commit an offense does not in itself establish entrapment. (See, e.g. *People* v. *Benford*, 53 Cal.2d 1 [345 P.2d 928] ; *People* v. *Cordero*, 240 Cal.App.2d 826 [49 Cal.Rptr. 924].) Nor does use by the police of a friend of the suspect to gain the latter's confidence establish entrapment. (*People* v. *Hunter*, 218 Cal.App.2d 385 [33 Cal.Rptr. 15].) In the absence of any testimony by Sweet that he was motivated solely by sympathy for Miss Etis, the argument is purely speculative.

The occasion on which Miss Etis said she was sick culminated in the sale of a non-narcotic powder falsely repre-

sented to be heroin. Section 11503, Health and Safety Code, reads: "Every person who agrees, consents, or in any manner offers to unlawfully sell, . . . or give any narcotic to any person, or offers, arranges, or negotiates to have any narcotic unlawfully sold, delivered, . . . or given to any person and then sells, delivers . . . or offers, arranges, or negotiates to have sold, delivered . . . or given to any person any other liquid, substance, or material in lieu of any narcotic shall be punished. . . ." ▉ The offense prohibited by this section is not committed unless a non-narcotic is sold, delivered, etc. "in lieu of" a narcotic. These words imply a substitution by the accused of the non-narcotic for the promised narcotic. Substitution implies conscious replacing of one thing with another. Specific intent to commit this offense must be proved. (*People* v. *Contreras,* 226 Cal.App.2d 700, 702 [38 Cal.Rptr. 338]; *People* v. *Lopez,* 213 Cal.App.2d 668, 673-675 [28 Cal.Rptr. 912]. Contra, *People* v. *Dalton,* 172 Cal. App.2d 15, 21 [341 P.2d 793]. Cf. *People* v. *Hicks,* 222 Cal. App.2d 265, 271-272 [35 Cal.Rptr. 149].)

▉ Sweet took no direct part in the sale; rather, he acted as the finder of an apparent intermediary who negotiated the sale. The circumstances of Sweet's finding do not suggest he was acting in concert with the seller in the supplying of the non-narcotic. There was no evidence that Sweet knew of the substitution, and no evidence from which knowledge of the fraud could reasonably be imputed to him, and therefore no evidence of his specific intent to commit the particular offense with which he was charged. Nor under the specific facts of this count was the fraudulent intent of the seller reasonably attributable to Sweet in order to make him an aider and abettor. (Pen. Code, § 31.) "There must be proof that the accused not only aided the actor but at the same time shared the criminal intent." (*People* v. *Butts,* 236 Cal.App. 2d 817, 836 [46 Cal.Rptr. 362].) While Sweet may have intended to commit a crime on 10 June, his intent was neither to bring about the specific events which took place that day nor to commit the specific crime of which he was accused. Other possible offenses of which he may have been guilty on that occasion, such as conspiracy to sell narcotics, or offer to sell narcotics, or attempt to sell narcotics, were not charged against him. (Cf. *People* v. *Brown,* 55 Cal.2d 64, 68 [9 Cal. Rptr. 816, 357 P.2d 1072].)

The judgment is reversed on count IX and affirmed on all other counts.

Roth, P. J., concurred.

HERNDON, J.—I concur in the portion of the opinion which affirms the convictions but I dissent from the reversal as to count IX because of the desirability of maintaining uniformity of decision in the construction and application of a penal statute which is an important part of the legislative plan in the control of traffic in dangerous drugs.

The *sole* assignment of error urged by appellant on this appeal is the contention that the evidence indicates as a matter of law that he was entrapped into committing the offenses of which he was convicted. By definition, this contention necessarily is founded upon the concession that appellant intentionally committed the proscribed acts or, at least, that he does not challenge the sufficiency of the evidence to establish such criminal conduct. That is to say, this assignment of error urges that the accused was "induced" or "lured" into *the commission of a crime* which he otherwise would not have committed and therefore he should escape punishment, not because his conduct did not constitute a criminal offense, but because, by reason of the conduct of its agents, " 'the government is estopped by sound public policy from prosecuting therefor.' " (*People* v. *Sweeney,* 55 Cal.2d 27, 48 [9 Cal.Rptr. 793, 357 P.2d 1049].)

*Sua sponte* the majority have advanced the proposition that the conviction as to count IX must be reversed because of the absence of proof that appellant knew of the "substitution" of a non-narcotic substance for the narcotic which the purchaser had been promised and the lack of evidence that appellant entertained the specific intent to defraud the purchaser.

Unquestionably the evidence is sufficient to support the finding of the trial court that appellant so actively participated in the transaction involved in count IX that he aided and abetted the commission of the criminal acts proscribed by section 11503. He was a principal in a transaction wherein he knowingly and intentionally assisted in making the arrangements leading to an agreement to sell and deliver a narcotic which was followed by the delivery of a non-narcotic substance. Appellant makes no contention to the contrary.

The majority opinion states: "There was no evidence that Sweet knew of the substitution, and no evidence from which knowledge of the fraud could reasonably be imputed

to him, and therefore no evidence of his specific intent to commit the particular offense with which he was charged. Nor under the specific facts of this count was the fraudulent intent of the seller reasonably attributable to Sweet in order to make him an aider and abettor.''

The effect of the last quoted language of the majority opinion is to transform the crime defined in section 11503 into a specialized variety of theft or criminal fraud requiring proof of the existence of a fraudulent intent. This holding of the majority is contradicted both by the plain language of the statute and by the holdings in prior well-considered decisions construing the section and declaring its purpose and intent.

In *People* v. *Hicks,* 222 Cal.App.2d 265, at pages 271 and 272 [35 Cal.Rptr. 149], it is stated with respect to the meaning and intent of section 11503 of the Health and Safety Code: ''We find nothing vague or uncertain in the statute. There is nothing unintelligible or ambiguous in the language of the act. Its language is quite clear. It says, so far as applicable here, that every person who offers to sell a narcotic and delivers a nonnarcotic substance is guilty of a crime. *This is true, whether at the time of the offer the offeror actually intends to deliver a narcotic or intends only to deliver a nonnarcotic. It is the delivery of a nonnarcotic that completes the crime.* Anyone reading the statute should have no difficulty in understanding what it means. In the statute '[t]here is a reasonably adequate disclosure of the legislative intent regarding the evil to be combatted in language giving fair notice of practice to be avoided.' (*People* v. *Shephard, supra,* p. 289 [169 Cal.App.2d 283].)'' (Italics added.)

Preceding the above quoted language from *Hicks,* the opinion contains an illuminating discussion of the legislative purpose in the enactment in 1953 of former section 11502, which, in 1959, was reenacted as present section 11503. Reference is there made to the earlier decision in *People* v. *Shephard,* 169 Cal.App.2d 283, wherein at pages 287 and 288 [337 P.2d 214] there is a quotation from the Assembly committee report which preceded the enactment, and at page 289 it is declared that ''A reading of the section discloses that it is a crime for a person to agree to sell a narcotic to someone, and then to deliver instead a non-narcotic substance.''

In *People* v. *Dalton,* 172 Cal.App.2d 15 [341 P.2d 793], the

court dealt with a similar factual situation. The language of Justice Tobriner found in this decision seems to me to support my view that the only essential elements of the offense charged in count IX are (1) agreeing to sell a narcotic; and (2) delivering a non-narcotic substance. Proof of fraudulent intent is unnecessary.

Reference is also made to the decision in *People* v. *Lewis,* 206 Cal.App.2d 82, at page 85 [23 Cal.Rptr. 495], wherein it is stated: "A violation of section 11503 of the Health and Safety Code requires only that a defendant agree, consent or offer to unlawfully sell, furnish, . . . any narcotic, and then sell, deliver, furnish . . . any other substance or material in lieu of a narcotic."

It may also be observed that in all other proscriptions in the "bunco" field, the Legislature expressly used the words "intent to defraud" or "defrauds," thereby demonstrating the intention that such specific intent should be a necessary element of the crime defined therein. (Cf. Pen. Code, §§ 470 et seq., 484 et seq., 504 et seq., 530 et seq.) The Subcommittee on Narcotics of the Assembly Interim Committee on Judiciary in 1953 expressly stated that the intent of section 11503 was not to reach those engaged in mere bunco operations but "individuals [who] are known to be in a position to violate the law [regarding the furnishing of narcotics] ; but, for some reason, they may feel that they are dealing with a law enforcement officer and thus deliver tobacco, water, or some other substance with the result that they have had the intent to commit the crime *but are testing out the officer.*" (Italics added.)

In *Haserot* v. *United States,* 321 F.2d 582, 583, in an opinion by Judge Barnes, the contention that section 11503 was a "bunco" law was rejected as follows:

"The sole question on appeal is whether Section 11503 is a 'narcotic or marijuana' law of the State of California within the meaning of 18 U.S.C. § 1407 (a).

"Appellant contends that Section 11503 is 'merely a legislative enlargement of the California "bunco" law,' and not a narcotic law. (Appellant's Brief, p. 7).

"It seems clear to us that Section 11503 is a 'narcotic or marijuana' law of the State of California. It is found in the California Health and Safety Code under Division X, entitled *'Narcotics,'* and under Chapter 5, entitled *'Illegal Narcotics.'* This section is listed among the prior narcotics offenses precluding probation in the event of a subsequent

conviction. (Cal. H. & S. Code, § 11715.6.) It is one of those narcotic offenses involving increased potential punishment limits in the event of a subsequent conviction. (Cf. Cal. H. & S. Code §§ 11500, 11500.5, 11501, 11502 and 11502.1.) Persons convicted of violating Section 11503 are required to register under Article 6 of the California Health and Safety Code, entitled 'Registration of Narcotic Offenders.' (Cal. H. &. S. Code §§ 11850.) ''

It is thus clear that the Legislature was not urged to pass a more strict *bunco* law to protect the addict but rather a *narcotic* law designed to cover the situation where on a first sale the supplier ''tests'' his purchaser. The Legislature realized that if the undercover operator were to arrest the suspected seller immediately upon consummation of the sale, it would be impossible to convict such person under section 11501 despite his activities in the narcotics field. One who ''tests'' another is not seeking *to defraud him*. If the latter passes the ''test,'' the supplier will then deliver the true narcotic.

Exactly this type of situation appears to have occurred in the instant case. On the occasion here in issue appellant introduced Officer Parks to one Robert Hunter. Hunter purported to sell the desired narcotic to the officer but told him that if he was unsatisfied with it he might return it. On a later occasion the parties met again and when the officer accused Hunter of selling them ''some bunk last time'' Hunter replied, ''Well, I told you guys when you bought it if they didn't like it to bring it back and I'll give them their money back. So why didn't you bring your stuff back?'' The officer then agreed to ''take another chance'' and this time Hunter furnished him with heroin.

If specific intent to defraud is an essential element in the crime defined by section 11503, then even the actual seller, Hunter, was not guilty thereof on the first occasion because, under the prosecution's own version of the facts, he was either ''testing'' Officer Parks or, as is often true in the chain of supply, he was unsure of the exact chemical composition of the substance in his possession. Nevertheless, I believe that it was exactly this type of conduct which the Legislature intended to proscribe by section 11503.

If appellant intended to deliver a narcotic of the variety offered, he was guilty of the more serious crime defined in section 11501 which imposes upon the violator a sentence of five years to life. As stated in *People v. Jackson*, 59 Cal.2d

468, 469 [30 Cal.Rptr. 329, 381 P.2d 1] : "Defendant contends that section 11501 does not encompass an offer to sell a narcotic when nothing is delivered. It is settled, however, that delivery is not an essential element of the offense of offering to sell a narcotic. [Citations.]"

Of course, where something *is* delivered and it is a narcotic, then the supplier is guilty of violating section 11501. However, if the material delivered is not a narcotic, then the supplier is guilty of the lesser offense defined by section 11503. As stated in *People* v. *Hicks, supra,* 222 Cal.App.2d 265, 272 : "This is true, whether at the time of the offer the offeror actually intends to deliver a narcotic or intends only to deliver a nonnarcotic. It is the delivery of a nonnarcotic that completes the crime."

I would affirm the judgment in its entirety.

Respondent's petition for a hearing by the Supreme Court was denied February 14, 1968. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.